## RIVERSIDE OIL & REFINING CO. et al. v. SWANSON.

No. 17890. Opinion Filed Nov. 27, 1928.

Withdrawn, Reconsidered, Approved, and Refiled July 16, 1929.

C. M. Oakes, for plaintiffs in error.

Hughes, Foster & Ellinghausen, for defendant in error.

HERR, C. This is an action brought by A. G. Swanson in the district court of Creek county against the Riverside Oil & Refining Company, a corporation, O. O. Owens, and others, to recover one-sixteenth of the gross proceeds of the sale of oil and gas derived from certain premises constituting the allotment of Mary Bell, a Creek freedman.

The action is based on a written contract entered into between the parties, whereby defendants agreed to pay such proceeds to plaintiff. The defense is fraud and failure of consideration. The case was tried by the court, a jury having been waived, and resulted in a judgment in favor of plaintiff for the sum of $3,840.65. Defendants appeal.

It is assigned as error that the judgment is not supported by the evidence, and this assignment constitutes the main contention of appellants.

It appears that Mary Bell, a Creek freedman, was the owner of the southeast quarter of the southwest quarter and lot 4 of section 19, and the east half of the southwest quarter of section 33, all in township 17 north of range 9 east, in Creek county, Okla.; that on the 5th day of July, 1922,

she executed and delivered to plaintiff, Swanson, an oil and gas lease on this entire tract, the consideration for such lease, as disclosed by the evidence, being $2,000. Shortly after the execution thereof, Swanson assigned the 80-acre tract in section 19, covered by said lease, to the Texas Company, which company subsequently assigned the same to defendants herein, and, on a later date, plaintiff, Swanson, also assigned the 80-acre tract in section 33, covered by the lease, to defendants.

It further appears that, on July 11, 1922, plaintiff took an assignment from Mary Bell of one-half of the royalty provided for in said lease, for which he paid the sum of $1,000. It appears, however, that prior to the execution of the lease and royalty assignment, and on July 3, 1922, Mary Bell was, by the county court of Muskogee county, decreed an incompetent, and J. W. Armstrong was appointed her guardian. The plaintiff, Swanson, at the time he acquired his interest from Mary Bell, had no knowledge of these proceedings. It appears further that, after having been advised thereof, Swanson took an appeal from the judgment of the county court to the district court of Muskogee county, which appeal resulted in a reversal of the judgment of the county court and a judgment in favor of Swanson decreeing Mary Bell to be competent. J. W. Armstrong, guardian for Mary Bell, took an appeal from this judgment to the Supreme Court of the state.

In the meantime, and while the appeal from the county to the district court was pending, J. W. Armstrong, guardian, sold, through the probate court of Muskogee county, an oil and gas lease on said premises, and the defendants herein, at such sale, became the purchasers thereof. Thereafter, and before the litigation was finally determined, a producing gas well was drilled by defendants on the tract in section 19. The Empire Gas & Fuel Company connected their line to said well, and took gas therefrom, but, owing to the condition of the title, refused to make payments for the gas so taken.

In this situation, a compromise was sought by all parties, and after several conferences, it was finally agreed that the appeal to the Supreme Court from the judgment of the district court, adjudging Mary Bell to be competent, should be dismissed, and two written contracts were entered into between plaintiff and defendants, one on February 19, 1924, which was not to be placed of record, and one on February 20th, which was placed of record, and is the contract upon which plaintiff bases his suit. This contract binds defendants to pay to plaintiff an undivided one-sixteenth of the gross proceeds from the sale of oil and gas, or either of them, heretofore or hereafter to be produced from the tracts above described.

The contract under date of February 19th is a lengthy contract, goes into detail in reciting the respective claims of the parties, recites the various legal proceedings taken, provides for a dismissal of the appeal to the Supreme Court herein mentioned, provides for the payment to plaintiff of one-sixteenth of the gross proceeds from the sale of gas from the tracts above described, and provides that the plaintiff shall assign to defendants his lease to the tract in section 33.

In accordance with the terms of this contract, plaintiff did assign to defendants his lease to said tract, and the appeal to the Supreme Court was dismissed on January 9, 1925.

It further appears that, on December 20, 1923, and before the contract sued on by plaintiff was executed, a release of the royalty assignment executed by Mary Bell to plaintiff on July 11, 1922, was executed by plaintiff, and in lieu thereof a new assignment of a one-half royalty interest was executed by Mary Bell to plaintiff.

The defense is based entirely on this release. It is contended by them that the contract sued on was entered into upon the assumption that plaintiff held a valid assignment of an undivided one-half of the royalty, which he could, in turn, assign to them, and that having released such interest prior to the time of the execution of the contract, the consideration, at least partially, failed.

The plaintiff admits the signing of the release, but contends that, at the same time, a new assignment was taken in lieu thereof; that the release was never delivered to Mary Bell, nor to anyone in her behalf, but was placed in escrow in the bank at Boynton to be there held by the bank until plaintiff could determine upon which assignment he would rely, and that, if he finally determined to rely on the first, the second assignment should be released. This contention is supported by the evidence of plaintiff and Mr. Patterson, who was, at that time, president of the bank.

It further appears that, prior to the ex-

ecution of the contract sued on and prior to the execution of the second royalty assignment, and on August 29, 1923, Mary Bell deeded her entire allotment to J. W. Armstrong in trust, however, for her use and benefit.

The evidence further establishes that it was at the suggestion of Mr. Armstrong that the release above mentioned was executed. It is established that, after having taken the second assignment, Mr. Armstrong demanded a release of the first, he contending that, unless a release be executed as to the first assignment, it would appear that plaintiff held an assignment to all of the royalty instead of only one-half thereof.

The testimony on behalf of the plaintiff is to the effect that, in obedience to the demand of Mr. Armstrong, the release was executed upon an agreement that the same should be left in escrow at the bank at Boynton, and not to be delivered until he, Swanson, could determine upon which assignment to stand; that the release was not to be delivered to Mr. Armstrong, and was not, in fact, so delivered, but was left in escrow at the bank in accordance with the above agreement.

Mr. Armstrong, however, testifies that the release was conditionally delivered to him; that the same was never placed in escrow; that the only condition attaching to the delivery was that the same should not be placed of record until plaintiff had settled his controversy with the defendants.

The evidence further discloses that sometime after the execution of the contract sued on, Mr. Armstrong presented this release to defendants and demanded from defendants payment of the entire royalty, he claiming one-half thereof under the release, and as to the other one-half contended that the second assignment executed, after Mary Bell had conveyed the premises to him in trust, was void for that reason.

Mr. Armstrong further testifies that the release was kept by him in his lock-box at the bank at Boynton. The president of the bank testifies he does not know how Mr. Armstrong got possession of the release, but testifies that it was not delivered to him at the time of its execution, but was left on deposit at the bank, as contended by plaintiff.

Mr. Armstrong further testifies that he left the release with defendant O. O. Owens, with the express understanding that the same should not be placed of record without the consent of plaintiff, but that it should be returned to him, Armstrong. The release was never returned to Mr. Armstrong, however, but was placed of record by an employee of defendants. The defendant Owens testifies that the recording thereof was not intentional, but that the same was placed of record by an employee through error.

It further appears from the evidence that up to the time of the delivery of the release to defendants by Armstrong, and claim made by him for the entire royalty, defendants regularly paid one-sixteenth thereof to plaintiff.

Immediately after discovering that this release was delivered to defendants and by them placed of record, plaintiff notified them as to the circumstances under which the release was executed, repudiated the same, executed an affidavit fully disclosing the circumstances under which the same was executed, placed the same of record and demanded payment from the defendants under the terms of the contract.

It is disclosed by the record that, sometime subsequent to the recordation of this affidavit, plaintiff also placed of record the second royalty assignment. It is strenuously argued by defendants that plaintiff, having placed this second assignment of record, is precluded from relying on the first assignment, and that the second assignment, having been executed by Mary Bell subsequent to the execution of the trust deed by her to Armstrong, there is, at least, some question as to the validity of such second assignment, and if it should be determined that such assignment is, in fact, void, and a release having been executed to the first assignment, defendants would be compelled to pay the entire royalty to Armstrong, and also one-sixteenth thereof to the plaintiff. We fail to see how such result could possibly follow.

It is admitted by Armstrong that the release of the first assignment was executed upon his demand; that there was no consideration therefor except the execution of the second assignment, and if such assignment is void for the reason as contended for by Armstrong, then the release is also void for want of consideration, and, in either event, plaintiff would be entitled to one-sixteenth of the royalty which he assigned defendants under the contract sued on.

After weighing the evidence offered by both parties, the court found that the consideration for the contract had not failed, and entered judgment in favor of plaintiff.

In our opinion, there is ample evidence to sustain this finding. If the release was executed under circumstances as contended by the plaintiff, and as evidently found by the trial court, its execution is no defense to plaintiff's cause of action.

It is finally contended by defendants that the evidence offered by plaintiff tending to establish the escrow agreement was inadmissible for the reason that the reply denying the execution and delivery of the release was not verified. A sufficient answer to this contention is that defendants did not accept the allegations of their answer as to the execution of the release as true, but proceeded to offer evidence to sustain the truth thereof, and having thus, by their own evidence, tendered to the plaintiff an issue thereon, they cannot now complain that plaintiff accepted the issue so tendered and attacked the release and evidence offered by defendants to establish the same with adverse evidence. On this proposition, in the case of Spaulding v. Thompson, 60 Okla. 136, 159 Pac. 509, this court says:

"In order for a litigant to avail himself of section 4759, Rev. Laws 1910, which prescribes that the allegation of indorsement upon a written instrument shall be taken as true, unless met by a verified denial, he must accept the allegation as true himself; but if he raises an issue thereon by introducing evidence to establish the truthfulness of said indorsement, it is too late then to complain if the defendant accepts the issue and attacks the indorsement and plaintiff's evidence substantiating the same with adverse evidence."

See, also, Doughty v. Funk, 24 Okla. 312, 103 Pac. 634 wherein it is held that the objection against a pleading here sought to be raised cannot be raised by objection to the introduction of evidence. It is there held that such objection should be raised by motion directed against the pleading itself, before issues are joined in the case.

Under the above authorities, there was no error in admitting the evidence objected to, even though the reply was not verified.

Judgment should be affirmed.

BENNETT, TEEHEE, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.