**In re Sandra F. WENK.**

**Nos. 02–60033–DOT, 02–60035–DOT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

July 16, 2002.

James E. Kane, Richmond, VA, for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held on April 10, 2002, on James E. Kane's motion to rehear and reconsider the court's sanctions order of March 5, 2002.

### Background.

On January 3, 2002, the court received two electronically filed chapter 13 petitions for debtor Sandra F. Wenk. Case Number 02–60033–T was filed on January 3, 2002, at 12:18 p.m. by attorney James E. Kane. Case Number 02–60035–T was filed at 1:21 p.m. on same day by attorney Bruce W. White. The cases were filed with both debtor's and counsel's electronic signature ("slash s" name). Both counsel are members of the Bar of this court, and both are approved participants in the court's electronic case filing system (ECF).

On January 4, 2002, White contacted chambers and informed the court of his belief that Kane had filed case number 02–60033–T without a petition having been signed by debtor. On January 10, after making several attempts to contact Kane to no avail, the court issued a show cause order compelling Kane and White to appear before the court and show cause why debtor's cases should not be dismissed. **JANUARY 30 SHOW CAUSE HEARING.**

Hearing was held January 30, 2002, for Kane and White to show cause why cases

which they filed for debtor on January 3, 2002, should not be dismissed.

At hearing held on January 30, 2002, Kane stated to the court that he had represented debtor and her husband in their joint chapter 7 case that was discharged in December 2001. He stated that he had been negotiating with the attorney representing the Wenks' mortgage company in an effort to halt a foreclosure on debtor's residence that was scheduled to occur on January 3, 2002.

According to Kane, debtor indicated that she wanted to file a chapter 13 case to prevent foreclosure and that he had scheduled an appointment for her to come in to sign her petition at 1:30 p.m. on January 3. On January 3, Kane did not arrive at his office until noon due to the snowstorm the night before. He stated that his paralegal called him at home on the morning of January 3 to let him know that debtor had called and wanted to make sure he was still going to file her petition. He also stated that debtor told his paralegal that she was not sure if she could make her 1:30 p.m. appointment due to the weather.

Kane stated that because of the weather, he asked his paralegal to file the petition from her home, advising her that debtor would come to the office at 1:30 p.m. to execute the bankruptcy papers. The petition was filed at 12:18 p.m. on January 3. Kane left a message for debtor on January 3 after she did not show up for her appointment. However, he never heard from her.

Kane stated he did not find out that White had filed a duplicate case until January 14 when Kane returned from vacation.

At hearing on January 30, White stated that debtor contacted him on January 3, concerned about an impending home foreclosure that was to occur that afternoon at 4 p.m. and her inability to get in touch with Kane. Debtor told White that she had an appointment with Kane at 1:30 p.m. on January 3, but she was unable to reach anyone at Kane's office other than a paralegal. Debtor and debtor's husband arrived at White's office around noon on January 3, and debtor signed her bankruptcy petition. The petition was filed at 1:21 p.m.

White stated that he attempted to contact Kane on the afternoon of January 3, but Kane was not in the office. White asserted that debtor advised him she had not authorized a filing by Kane as she had not been able to get in touch with him on January 3 regarding her petition.

**THE COURT'S PRIOR RULINGS.**

On February 14, 2002, the court issued an order dismissing case 02–60033–T. On March 1, 2002, the court issued a Memorandum Opinion supplementing its February 14 dismissal order based upon its finding that Kane, a member of the Bar of this court and an approved participant under the court's electronic case filing system, had filed case 02–60033–T on January 3, 2002, with a petition that had not been signed by debtor. The court's determination was based upon Kane's remarks to the court at hearing on January 30, 2002.

Also on March 1, the court issued an order of sanctions suspending Kane and any member of his law firm from filing any new bankruptcy petition in the Eastern District of Virginia for the period of March 11, 2002, through March 31, 2002, and requiring Kane and his assistant to attend ECF training prior to April 1, 2002. On March 5, 2002, the court amended its sanctions order to defer the suspension period to April 1, 2002.

**MOTION TO REHEAR.**

On March 7, 2002, Kane filed a motion to rehear and reconsider the sanctions order of March 5, 2002. In his motion, Kane

states that there were unusual circumstances surrounding the filing of case 02–60033–T that should excuse his filing of an electronic petition including debtor's electronic signature when debtor had not signed an original paper petition.

Additionally, Kane asserts that: 1) the order of sanctions went beyond the scope of the show cause hearing conducted on January 30, 2) the sanctions are disproportionate to the alleged infraction, and 3) the sanctions ordered against other members of Kane's firm exceed the scope of the proceedings and the infraction.

On March 15, the court granted Kane's motion to rehear and reconsider. On same day the court issued an order vacating its amended order of sanctions dated March 5, 2002.

**SHOW CAUSE REHEARING.**

Show cause rehearing was held on April 10 to determine why sanctions, including monetary sanctions, should not be imposed.

At hearing, Thomas Papa appeared as counsel for Kane. In essence, counsel for Kane argues that the circumstances surrounding the filing are unique in that: 1) debtor was about to lose her home, 2) debtor had made several frantic phone calls to Kane's office, 3) a snowstorm had virtually shut down the city, 4) debtor was unable to make it to Kane's office, 5) Kane experienced trouble making it to the office, and 6) this petition, though unsigned, had been prepared many weeks before and Kane was very familiar with the parties.

Counsel asserts that the mere purpose of debtor's signature on the petition is to affirm that the information contained in the petition is true and correct. Counsel argues that there was no wrong committed because the information on the petition was correct. Lastly, counsel argues that had Kane not filed the petition, debtor would likely have sued Kane for malpractice.

At rehearing, Kane testified to essentially the same facts leading up to the filing of case 02–60033–T as he stated at hearing on January 30. However, Kane testified to the following facts for the first time at rehearing, some of which contradict his testimony of January 30.

At rehearing, Kane said that it was not his intention to file an electronic petition purporting to have debtor's signature, but to file a deficient petition [1] without any signatures on it—debtor or attorney. Kane stated that he planned to fix the deficient petition upon his return to the country on January 14 and that he had instructed his paralegal to have debtor sign the original petition while he was away. However, at previous show cause hearing on January 30, Kane stated that it was his intention to first file the electronic petition and that debtor would come into the office afterwards to sign the original petition.[2]

---

1. Kane also testified that because he had previously represented debtor in a prior joint bankruptcy, he was able to transfer most of the information from debtor's prior chapter 7 petition, with updates achieved by telephone conversations with debtor. Kane stated that he filed a minimal petition in Case 02–60033–T including only debtor's name, address, social security number, and estimation of assets and liabilities and that all of the information in the petition was true and correct.

2. Based on the transcript from the January 30, 2002, show cause hearing, Kane testified as follows:

> Kane: Mrs. Wenk had requested that we go ahead and get something filed so that she could rest easy, and then she would get everything else executed. So I spoke with my paralegal over the phone, and told her to go ahead and get it filed from home. . . . And Ms. Wenk would come in at 1:30 and get everything fully executed.

Kane further stated that it was his practice to sometimes file petitions without a debtor's signature because the debtor could receive the benefit of the automatic stay during the pendency of the court's issuance of a deficiency notice and ten day time to cure.[3]

Kane testified that he was unable to retrieve voicemail messages from his cellular phone while out of the country and first learned of a problem with the petition on January 13 when he was flying back into the United States. He stated that when he returned to the office on January 14 he noticed that there was an electronic signature on the petition. He notified his paralegal of the error, and she informed Kane that the electronic filing program's default is to place electronic signatures on petitions.

Kane testified that he has never received a filing fee from debtor for dismissed case 02–60033–T, and the firm paid the $185.00 filing fee in the case.

Robert Van Arsdale, Assistant U.S. Trustee, appeared on behalf of the U.S. Trustee's office and cross-examined Kane. Van Arsdale questioned Kane about his April 10 testimony that it was his intention to file a deficient petition unsigned by both he and debtor. The U.S. Trustee focused on Kane's January 30 testimony, at which time Kane stated that he had signed the petition at the time it was filed.[4] In response, Kane asserted his belief that the court was inquiring whether he had signed the petition by January 30, the date of the hearing, not January 3.

Van Arsdale argued that the court should suspend Kane from filing new petitions for 180 days.

*Conclusions of Law.*

## ELECTRONIC PETITIONS ARE EQUIVALENT TO WRITTEN PETITIONS.

Federal Rule of Bankruptcy Procedure 5005(a)(2) provides that "[a] document filed by electronic means in compliance with a local rule *constitutes a written paper* for the purpose of applying these rules, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code." Fed. R. Bankr.P. 5005(a)(2) (emphasis added). A case filed electronically is no different from a paper case filed in person at the counter. As such, the electronically filed petition must comply with Local Bankruptcy Rule 5005–1,[5]

Tr. at 3, *In re Wenk* (Bankr.E.D.Va. January 20, 2002) (Case Nos. 02–60033–T, 02–60035–T)

**3.** At rehearing, Kane specifically stated "I indicated to [my paralegal] to go ahead and file without a signature on it, . . . as we had done in prior cases, we normally would file it, we get a deficiency notice from the court that . . . it was missing a signature, but at least we would get the benefit of a stay. . . ." Tr. at 10–11, *In re James Kane, Esq.* (Bankr.E.D. Va. April 30, 2002).

**4.** Based on the transcript from the January 30, 2002, show cause hearing, the following dialogue occurred:

Court: How did the case get filed by your office? You were out of the country.

Kane: It was filed that day, on the 3rd. I was still in my office.

Court: You were there. Did you sign the petition?

Kane: Yes, I did.

Court: Did the debtor sign the petition?

Kane: The debtor never came in to sign. That's what the problem is. The debtor never kept her appointment.

Tr. at 4, *In re Wenk* (Bankr.E.D.Va. January 20, 2002) (Case Nos. 02–60033–T, 02–60035–T).

**5.** On January 1, 2002, the Judges for the United States Bankruptcy Court for the Eastern District of Virginia issued Standing Order No. 01–6 entitled "Order Adopting Case Management/Electronic Case Filing Procedures" which states that "[t]he Administrative Proce-

which specifically states that "[e]ach petition filed must include an unsworn declaration with the signature of all debtors...." L.B.R. 5005–1(D)(1). Local Bankruptcy Rule 5005–1 further requires that "[a]ll petitions, motions, pleadings and other papers shall be signed by counsel of record...." L.B.R. 5005–1(C)(4).

Also, in all electronic filings that require original signatures,[6] verification under Federal Rule of Bankruptcy Procedure 1008 or contain an unsworn declaration as provided in 28 U.S.C. § 1746, *"originally executed copies must be retained* by the filer until three (3) years after the closing of the case unless the Court orders a different period ... [and][u]pon request of the Court, the filer must provide original documents for review." *Administrative Procedures for Filing, Signing, Retaining and Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF) System (Exhibit to Standing Order No. 01–6)*, II(C)(1) (Bankr.E.D.Va. Jan. 1, 2002) (replaced by Standing Order 02–2 (Bankr.E.D.Va. July 1, 2002)) (emphasis added).

■ In filing a petition electronically, the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor *prior to* electronically filing the case.

■ A petition was filed electronically at Kane's direction indicating that debtor's signature had been obtained on the origi-

nal petition when it had not. At second show cause hearing held on April 10, Kane asserted for the first time that it was his intention to file a deficient petition, without any signatures, and that the petition was mistakenly filed with the electronic signature of Kane and debtor.

When the petition was received, the court was presented with a document which stated on its face that debtor had signed it, under penalty of perjury, when it was not true. This amounts to fraud. The court must consider that Kane's action of filing a petition electronically purporting to have debtor's signature is no different than Kane physically forging debtor's signature and handing the petition over the counter to the clerk.

Because of the novelty of electronic filing, the court has been unable to find a case that has dealt specifically with electronic signatures. However, various courts have broached situations in which attorneys, believing that an impending emergency necessitated an immediate bankruptcy filing, physically forged a debtor's signature on the petition. *See In re Ludwick*, 185 B.R. 238 (Bankr.W.D.Mich. 1995) (holding that an attorney's forgery of debtor's signature on a petition and dishonest testimony warranted reimbursement of attorney fees, monetary sanctions, and suspension from practicing before the court for two years); *In re Nesom*, 76 B.R. 101 (Bankr.N.D.Tex.1987) (holding that attorney's forgery of debtor's signature on

dures provide a means for the signing of pleadings and papers through the mechanism of a password, *in compliance with LBR 5005–1(C)(4)....* " *Order Adopting Case Management/Electronic Case Filing Procedures (Standing Order 01–6)*, page 1 (Bankr.E.D.Va. Jan. 1, 2002) (replaced by Standing Order 02–2 (Bankr.E.D.Va. July 1, 2002)) (emphasis added).

6. In electronically filed cases, the "/s/" followed by a full typewritten name (e.g., /s/Jane Doe) "constitutes that person's signature under FBRP 9011 and LBR 5005–1(C)(4)." *Administrative Procedures for Filing, Signing, Retaining and Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF) System (Exhibit to Standing Order No. 01–6)*, II(C)(2) (Bankr. E.D.Va. Jan. 1, 2002) (replaced by Standing Order 02–2 (Bankr.E.D.Va. July 1, 2002)).

the statement of financial affairs and schedules warranted suspension from practicing before the court for sixty days).

No court in the above cited cases found that the situations facing the attorneys justified forgery of debtor's signature, and sanctions were imposed.

## PURPOSELY FILED DEFICIENT PETITIONS.

 Based on Kane's testimony at rehearing regarding his intention to file an unsigned petition, Kane seems to believe that filing a deficient electronic petition with no signatures is acceptable. The court considers this as no less egregious than filing an electronic petition purporting to have debtor's signature when debtor has not signed an original petition.

The court understands that petitions are often filed in skeletal form and later amended; however, a debtor's signature is absolutely required even on skeletal petitions. While Local Bankruptcy Rule 5005–1(E) provides a procedure whereby persons filing "pleadings or other papers not meeting the requirements of [the] Local Bankruptcy Rules will receive a Notice of Deficient Filing allowing for ten days to correct the deficiency" before striking the pleading or other paper, this rule should not be viewed as an extension of time during which counsel can procure debtor's signature on the petition.

Local Bankruptcy Rule 5005–1(E) was enacted to allow parties who had made honest, inadvertent mistakes time to cor-

rect those mistakes without having to pay another filing fee. Intentionally filing an unsigned petition to attain the benefit of the automatic stay for ten days during which the deficiency may be cured is ultimately a fraud on the court and debtor whether or not it appears to be allowed by Local Bankruptcy Rule 5005–1(E). The court depends on the professional and moral judgment of attorneys, and this practice is a flagrant abuse of the bankruptcy process.[7] It not only stretches the court's rules far beyond their purpose, but more importantly, it could ultimately harm debtors.

 Bankruptcy is a very personal action which should only be undertaken by the individual. As stated by Judge Bonney, "[b]ankruptcy is a serious step; it holds its stigmas still. It is a unique judicial process where one is laid bare, financially . . . . [and] results in a court record for future employers, creditors, friends, relatives and the public to see." *In re Raymond,* 12 B.R. 906, 907 (Bankr. E.D.Va.1981). Furthermore, a bankruptcy filing remains on the debtor's credit report for ten years despite the fact that the credit report will indicate a dismissal. *See* 15 U.S.C. § 1681c(a)(1). This could adversely affect debtor in credit and employment decisions.

## PURPOSE OF DEBTOR'S SIGNATURE.

 Contrary to the argument of Kane's counsel, the purpose of debtor's

---

7. The Preamble to the Virginia Rules of Professional Conduct states:

[i]n the nature of law practice . . . conflicting responsibilities are to be encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an upright person while earning a satisfactory living. The Rules of Professional Conduct

prescribe terms for resolving such conflicts. Within the framework of these Rules, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules.

*Virginia Rules of Prof'l Conduct,* Preamble ¶ 8 (2001).

signature on the petition is not merely to affirm that the information contained in the petition is true and correct. Logic dictates that only the debtor can state under oath that the information provided in his or her petition is true and correct. *See In re Harrison*, 158 B.R. 246, 248 (Bankr.M.D.Fla.1993) (holding that "no one can grant authority to verify under oath the truthfulness of statements contained in the documents and to verify facts that they are true when the veracity of these facts are unique and only within the ken of the declarant"). Moreover, debtor's signature indicates debtor's consent to the bankruptcy filing, consent which can only be given by debtor.[8]

■ Further, Rule 9011[9] imposes obligations on both attorneys and debtors to sign certain documents, and specifically prohibits attorneys from signing a debtor's name to the lists, schedules and statement of financial affairs.[10]

■ The ramifications of Kane's action reach far beyond this case. Attorneys serve as officers of the court, which obligates them: 1) to be candid with the court, 2) to bring only non-frivolous matters before the court, and 3) to maintain a professional and courteous demeanor before the court. *Virginia Rules of Prof'l Conduct* R. 3.1, 3.3 (2001).

■ Attorneys should not take their position lightly because they have a "special responsibility for the quality of justice" and a "duty to uphold [the] legal process." *Virginia Rules of Prof'l Conduct*, Preamble ¶ 1, 4 (2001). Further, "[t]he integrity of the judicial process in any court depends to a large extent on the veracity and integrity of the attorneys who practice before it. Absent the trust those virtues inspire, the system cannot function." *In re Carlton House of Brockton, Inc.*, 93–21122, 1996 WL 442734, at *5 (Bankr. D.Mass. Feb.20, 1996).

**8.** By signing the petition debtor states: "I declare under penalty of perjury that the information provided in this petition is true and correct.... *I request relief in accordance with the chapter of title 11, United States Code, specified in this petition."* Chapter 13 Bankruptcy Petition, Official Form 1, Form B1, page 2 (rev.9/01) (emphasis added).

**9.** Federal Rule of Bankruptcy Procedure 9011, which governs the signing of pleadings and papers, provides, in pertinent part, that:

(a) Signing of papers
Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name....
(b) Representations to the court
By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances,(1) it is not being presented for any improper purpose, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
Fed R. Bankr.P. 9011(a)-(b).

**10.** Federal Rule of Bankruptcy Procedure 1008 requires that these documents be verified by the debtor and states that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr.P. 1008.

■ The court is aware that Kane faced a difficult situation when he caused the petition to be filed on January 3. Nevertheless, this was not an excuse for rules to be bent, much less ignored. The court's rules are in place to provide a concrete answer in difficult situations. The very integrity of the judicial system depends on the court's ability to trust its officers to uphold such rules. Making the decision to sanction an attorney is one of the most grievous duties of a judge. However, it is nonetheless necessary when rules are violated.

■ The court finds that Kane violated Federal Rule of Bankruptcy Procedure 9011 because there could not have been a belief that the filing of a petition with what amounts to a forged debtor's signature (or a petition with no signatures for that matter) was proper or warranted under existing law or a good faith argument to extend the law. Upon finding a violation of Rule 9011, a court may impose sanctions.[11] Federal Rule of Bankruptcy Procedure 9011(c)(2) gives the court wide latitude in imposing sanctions to include non-monetary or monetary penalties.

■ The court finds that Kane's actions impeded and disrupted the bankruptcy process and caused this court to incur unnecessary expense. This conduct is sanctionable under the equitable powers granted this court under 11 U.S.C. § 105, and the court will impose an appropriate sanction.

A separate order will be entered.