**In re Kevin/Adrienne KOLIBA,
Debtors.**

No. 05–74612.

United States Bankruptcy Court,
N.D. Ohio.

Jan. 17, 2006.

**40**

Ericka S Parker, Esq., Toledo, OH, for debtors.

John N. Graham, Toledo, OH, for trustee.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Motion by the United States Trustee to Dismiss pursuant to 28 U.S.C. § 1746. Heard at the same time as this Matter was the United States Trustee's identical Motion to Dismiss in the case of Paul Sielschott, Case No. 05–76147. At the Hearing, all the Parties with an interest in this matter were afforded the opportunity to make arguments in support of their respective positions. At the conclusion of the Hearing, the Court took the Matter under advisement, so as to afford

time to give the issues raised by the United States Trustee's Motion thorough consideration. The Court has now had this opportunity, and finds, for the reasons that will now be explained, that the Motion of the United States Trustee to Dismiss pursuant to 28 U.S.C. § 1746 should be Denied in both this Matter, as well as in the case of Paul Sielschott.

### FACTS

As it concerns the merits of United States Trustee's Motion to Dismiss, the facts and circumstances in this case and in the separate case of Paul Sielschott are substantially identical. Consequently, on the merits of the United States Trustee's Motion to Dismiss, both cases will be discussed as one.

Just prior to October 17, 2005, the date on which the majority of the substantive provisions of BAPCPA[1] took effect, the Debtors filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Pursuant to procedures established in this bankruptcy district, the Northern District of Ohio, the Debtors' petition was filed electronically. Ericka Parker, an attorney in good standing in this Court, represented the Debtors in their bankruptcy, filing the electronic petition on their behalf.

In the electronic petition filed with the Court, both the Debtors' signature and Attorney Parker's signature were represented by the format of "/s/" followed by the person's name. Just prior to electronically filing their petition, the Debtors and their attorney physically signed the form entitled, "Declaration re: Electronic Filing of Documents and Statement of Social Security Number."[2] One week after their

---

1. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

2. Pursuant to the "Administrative Procedures Manual" for Northern District of Ohio, Bankruptcy Courts, as adopted on September 6,

petition was electronically filed, the Court received and then docketed this Declaration. At no time during this process, however, did either the Debtors or Attorney Parker physically sign the bankruptcy petition.

Based upon the lack of physical signatures contained in their bankruptcy petition, the United States Trustee (hereinafter referred to as the "UST") commenced the instant action to Dismiss the Debtors' case without prejudice. As taken directly from the Motion of the UST, the "basis for this motion [to dismiss] is that the debtors did not actually sign any bankruptcy petition prior to the filing of a petition electronically." (Doc. No. 10, at pg. 1). In direct response, the Debtors, in addition to objecting to the UST's Motion, corrected the signature deficiencies in their petition, with both of the Debtors as well as Attorney Parker physically signing the petition. However, no record of this correction was entered in the Court's docket.

### DISCUSSION

Bankruptcy Rule 5005(2) authorizes bankruptcy courts "to permit documents to be filed, signed or verified by electronic means ..." Acting under this authority, the bankruptcy courts in the Northern District of Ohio have required that all documents filed with the court be accomplished through the district's "ECF" system (Electronic Case Filing); since this requirement was made mandatory at the beginning of 2004, the filing of a petition on paper, albeit with some limited exceptions, has not been permitted in this Court.

When the filing of bankruptcy documents is accomplished by electronic means, Bankruptcy Rule 5005(2), together with Bankruptcy Rule 9029, allow courts to adopt procedures and protocols to administratively handle the electronically filed documents.[3] The only limitation placed upon this authority is that such procedures and protocols be "consistent with but not duplicative of-Acts of Congress and these rules" and that they "do not prohibit or limit the use of the Official Forms." FED. R. BANK.P. 9029(a)(1); FED.R.CIV.P. 83. To this end, the bankruptcy courts in the Northern District of Ohio established and published an "Administrative Procedure Manual" for ECF. (General Order # 02–2; 03–1). Once implemented, all attorneys practicing in this District were required to sign an agreement whereby the provisions of this Manual, including subsequent modifications, were incorporated by reference.

█ With conventional paper filings no longer permissible under the ECF system, the "Administrative Procedure Manual" set forth certain protocols to handle one of the natural consequences of adopting an electronic filing system: the lack of any originally signed documents, petitions included, on file with and maintained by the Court. Among other things, this procedural adaptation was necessary to maintain the integrity of the bankruptcy process; the purpose of a debtor's signature on a petition serves to verify that the facts set forth therein are correct. *Briggs v. LaBarge (In re Phillips)*, 317 B.R. 518, 523 (8th Cir. BAP 2004). The actual mechanics for handling documents that require a signature, but which are no longer filed with the Court, is handled in Part II, ¶ B, of the "Administrative Procedure Manual." The substance of the provisions set forth thereunder, which are precise

2002, by General Order No. 02–2, this form is required to be filed with the Court "whenever the initial document requiring the debtor's signature is electronically filed in a case ...."

3. Also see Rules 5(e) and 83 of the Federal Rules of Civil Procedure; Bankruptcy Rules 9011 and 9036; and Local Bankruptcy Rules 5005–2(b) and 9037–1.

and detailed, may be summarized as follows:

First, as to "registered user," primarily attorneys, the signature of an electronically filed document must be "indicated as /s/name." And as to any documents bearing the actual handwritten signature of the user, or the signature of a signer on whose behalf the user files the document (e.g., the debtor), it is required that the user maintain the document for a period of one year commencing from the time the case is administratively closed. (Part II, ¶ B(1)). As to a debtor, it is set forth that any document requiring the debtor's signature must be signed by the debtor, followed by the electronic submission of the document to the Court with the debtor's signature also being "indicated as /s/name."(Part II, ¶ B(2–a)).

As required, these signature protocols serve to compliment but not supplement the Bankruptcy Rules. In this way, Bankruptcy Rule 1008 sets forth that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." In addition, the official bankruptcy forms, as adopted under the authority set forth in Bankruptcy Rule 9009, provide that a debtor affix their signature to the petition, declaring, under penalty of perjury, as to the veracity of the information contained in the petition and setting forth that relief is requested under the Bankruptcy Code.

A fair, albeit technical, reading of the Bankruptcy Rules and official forms, together with this Court's ECF's Administrative Procedures, shows then that when represented by an attorney, there exist these signatory requirements: (1) although never filed with the Court, both the debtor and his or her attorney must physically sign a bankruptcy petition prior to it being filed; and (2) that once signed, debtor's legal counsel is to preserve the document for a period of one year following the closing of the case. It is the failure of the Debtors and Attorney Parker to abide by these requirements which forms the basis for the UST's Motion to Dismiss.

On the position taken by the UST, neither the Debtors nor Attorney Parker dispute that fact that they failed to cause their signatures to be affixed to the Debtors' bankruptcy petition before it was electronically filed with the Court. Instead, Attorney Parker argues that dismissal is not an appropriate remedy in this case, describing it at the Hearing as akin to using a nuclear bomb to kill a fly. And on a number of different levels, the Court agrees.

Bankruptcy courts are courts of equity, and equity holds that substance will prevail over form. *In re Madeline Marie Nursing Homes,* 694 F.2d 433 (6th Cir. 1982) (where the law is silent, bankruptcy courts, as courts of equity, will look through the form to the substance of any particular transaction). But the remedy sought by the UST,—that of dismissing the Debtors' case—elevates to new heights doing just the opposite: placing form over substances. On the one side, there is the Congressionally conferred right of bankruptcy relief; on the other, the UST seeks to have this statutory right overridden for what is plainly a technical violation of a protocol which is, itself, derived from what can only be termed a morass of interlocking procedural and administrative rules.

In this very same way, the remedy sought by the UST does not fit within the very spirit of those Rules upon which it relies for its Motion to Dismiss. At their beginning, the Bankruptcy Rules provide that their scope is to be "construed to secure the *just* ... determination of every case and proceeding." Fed. R. Bank.P.

1001 (emphasis added). This same reading applies just as equally to the protocols set forth in the Administrative Procedures Manual for ECF, with the authority for their enactment being derived directly from the Bankruptcy Rules. FED. R. BANK.P. 5005.

Additionally, the UST's Motion for Dismissal clashes with the statutory presumption that once commenced, a Chapter 7 bankruptcy case should proceed until the case is fully administered. *In re Barnette,* 309 B.R. 516, 518 (Bankr.N.D.Ohio 2004). This policy is reflected in § 707(a), which establishes that, as a minimum threshold, a case may only be dismissed "for cause" which may include, but is not limited to, (1) unreasonable delay by the debtor that is prejudicial to the creditors; (2) nonpayment of required fees and charges; and (3) the failure by the debtor to file certain required information. The action brought by the UST for dismissal, however, does not cite to any of these grounds, thus leaving this Court with no explicit statutory ground upon which to base the dismissal of the Debtors' case.

To be sure, the "for cause" proviso of § 707(a) affords an independent basis for dismissal. Yet, while courts have wide latitude in making a determination as to the existence of "cause," as a minimum threshold this standard envisions the furtherance of a bankruptcy objective, not simply a debtor or other party's contention that its personal interest would be better served by a dismissal. *Id.* at 519. As an example, the Sixth Circuit Court of Appeals has held that "for cause" may be based upon a debtor's "lack of good faith." *In re Zick,* 931 F.2d 1124, 1127 (6th Cir. 1991). But in this case, absolutely nothing has been put forth or even alleged which would tend to show that the Debtors are not honest, and thus not deserving of the protections of the Bankruptcy Code. On the other side of the coin, the UST did not offer any satisfactory explanation as to how an objective of bankruptcy law would be furthered by dismissal. For example, it did not allege that the dismissal of the Debtors' case would be in the best interest of the Debtors' estate or their creditors.

Finally, practicable considerations dictate the inappropriateness of dismissal in this case. During 2005, approximately 80,000 petitions were filed in the bankruptcy courts in the Northern District of Ohio. When directly asked, the UST could only speculate on how many or what percentage of these cases could potentially give rise to the same issue as that presented here regarding a lack of original signatures. Even so, the UST acknowledged that the number could be from four hundred to as many as in the thousands.

The real potential therefore exists for a large scale unwinding of a process that has already been set well into motion, and on which potentially large numbers of people have relied—debtors and creditors both— and which has involved an incalculable number of hours of administration. Even this aside, the gravity of the UST's Motion to Dismiss on the bankruptcy process looms very large. At a minimum, the relief sought by the UST would place into the bankruptcy system a large amount of uncertainty as the die would be cast: mere technical violations of the Rules and Procedures of bankruptcy could very well result in the immediate dismissal of a large number of cases. Other questions, and concerns for their potential negative implications, also continue to spiral outward:

Will similar actions be brought in closed cases? Also, will similar actions be brought in Chapter 13 cases, including those in progress since the commencement of mandatory ECF filing? How will asset cases be handled? What efficacy will court orders involving transfers of proper-

ty have under § 363? Why wasn't the issue pertaining to original signatures immediately raised when mandatory ECF filing was implemented two years ago? Undoubtedly, these questions and their potential implications only begin to touch the surface, with the full impact of the UST's Motion to Dismiss simply being impossible to conceptualize at this juncture. Still, it is safe to say that if it were successful, the action brought by the UST to dismiss would serve to call into question the finality of bankruptcy orders and thus frustrate a central policy of the bankruptcy laws which is to promote the expedient administration of the bankrupt estate. *See Galt v. Jericho–Britton (In re Nucorp Energy, Inc.)*, 812 F.2d 582, 584 (9th Cir. 1987).

It is this Court's duty, first and foremost, to protect the integrity of the bankruptcy process. *In re Commercial Fin. Servs., Inc.*, 247 B.R. 828, 848 (Bankr. N.D.Okla.2000). But when all the issues just discussed are considered,—that of procedure, substantive law and policy—the Court simply cannot square this duty with the UST's Motion to Dismiss. The Court is therefore invariably lead to but one conclusion: it would be highly inappropriate, as a matter of discretion, to dismiss this case.

█ Yet, while the foregoing discussion has closed this Court to the option of exercising its discretion to dismiss this case, this alone is not dispositive to the outcome in this matter. To the contrary, the primary focus of the UST's position is that dismissal in this matter is not discretionary. Rather, the UST posits that the failure of Attorney Parker and the Debtors

to sign the Debtors' bankruptcy petition constitutes a jurisdictional defect.

The jurisdiction of this Court, as a bankruptcy court, is created and defined by 28 U.S.C. § 1334. At its heart, this section confers upon the district courts, and therefore by extension this Court,[4] "original and exclusive jurisdiction of all *cases* under title 11." *Id.* at ¶ (a) (emphasis added). As the term is used in this section, a case is commenced by "the filing with the bankruptcy court of a petition by an entity that may be a debtor under such chapter." 11 U.S.C. § 301. *See also* 11 U.S.C. § 302 (for a joint petition). A bankruptcy court's jurisdiction thus arises when a petition in bankruptcy is filed.

For its Motion to Dismiss, the UST relies directly on this jurisdictional framework, but argues that a fatal defect exists therein on account of the Debtors' noncompliance with Bankruptcy Rule 1008. According to the UST, compliance with Rule 1008 is necessary for a petition to become legally operative so as to commence a case. And further, the Debtors failed to comply with this Rule when they failed to sign their bankruptcy petition, thereby depriving this Court of any jurisdiction because simply put, there is no case.

As set forth earlier, Bankruptcy Rule 1008 requires that all petitions, prior to being filed, be either verified, or contain an unsworn declaration as provided in 28 U.S.C. § 1746. Despite not signing their petition, the Debtors begin their argument in opposition by arguing that, regardless as to the jurisdictional implications of this Rule, they complied with its mandates when they signed, prior to their petition being filed, what is known as the "Declara-

---

4. 28 U.S.C. § 157(a) provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be re-

ferred to the bankruptcy judges for the district." Pursuant to the General Order of Reference, bankruptcy cases in this district are referred to the bankruptcy courts.

tion re: Electronic Filing of Documents and Statement of Social Security Number." (Part II, ¶ B(2–b)). Among other things, this Declaration requires that both the debtor(s) and his or her attorney "declare under penalty of perjury" to the accuracy of the information set forth in the petition. This Document is prescribed in the "Administrative Procedure Manual," and is part and parcel of the Manual's signature requirements, also discussed earlier.

At this time, however, the Court is not willing to go so far as to accept the Debtors' argument that the signatures in the "Declaration re: Electronic Filing" serve to verify the petition within the meaning of Bankruptcy Rule 1008. First, as pointed out by the UST, the language in the Declaration is different from the Bankruptcy Forms, with the Declaration omitting the critical language that the debtor is requesting bankruptcy relief. Furthermore, the purpose of the Declaration is limited, being described in the "Administrative Procedure Manual" as confined to serving this function: "The purpose of the filing of the signature declaration form is to assure that the debtor's handwritten signature and Social Security Number are on file with the Court."(Part II, ¶ B(2–b)). This, however, still leaves open the more fundamental question: whether, as the UST argues, compliance with Rule 1008 is jurisdictional prerequisite?

It appears that nowhere in the Bankruptcy Code is it provided that a debtor, or for that matter their attorney, must sign a bankruptcy petition. Instead, signature requirements are Rule driven. But insofar as the Rules go, Rule 1008 does not constitute the last word on a petition's signature requirements.

Importantly, Bankruptcy Rule 9011, which by its specific terms applies to bankruptcy petitions, sets forth in the last sentence of paragraph (a) that an "unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the *attorney or party*." (emphasis added). Thus, Rule 9011 allows a party to correct a signature omission in a petition so long as they do promptly once learning of the defect. And compliance with this remedial measure occurred here; immediately after the UST filed its Motion to Dismiss, both Attorney Parker and the Debtors signed the Debtors' bankruptcy petition.

■ The UST, however, while acknowledging the curative nature of Rule 9011, argues that its applicability does not extend to the particular circumstances presented in this matter. Two points were made in support. First, it is the position of the UST that the Rule's curative nature does not extend to the situation where a debtor is represented by an attorney. Second, the UST argued that by its use of the term "stricken," the Rule cannot operate to correct what is otherwise a jurisdictional defect that exists because of the omission of a signature. A review of applicable precedent, however, shows that neither of these points have legal support.

■ Rule 9011, being derived from Rule 11 of the Federal Rules of Civil Procedure, is to be interpreted consistently therewith. *In re Coones Ranch, Inc.*, 7 F.3d 740 (8th Cir.1993). To this end, the Supreme Court in *Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, rejected the UST's first position that Rule 11 will not apply to a represented party's signature. 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). In coming to this holding, the Court held that regardless of whether a represented party is required to sign a document, when they do, Rule 11 will apply:

The only way that [a party] can avoid having to satisfy the certification standard is if we read "attorney or party" as used in sentence [5] to mean "attorney or unrepresented party." Only then would the signature of a represented party fall outside the scope of the Rule. We decline to adopt this unnatural reading, as there is no indication that this is what the Advisory Committee intended. *Id.* at 929. The second point of opposition raised by the UST as to Rule 9011's inapplicability also does not comport with the Supreme Court's jurisprudence on Rule 11.

It is the position of the UST that by Rule 9011's use of the term "stricken," it does operate to correct what would otherwise be a jurisdictional defect. However, in *Becker v. Montgomery,* the Supreme Court, when addressing the jurisdictional nature of the Federal Rules of Appellate Procedure, held that the omission of a signature was "not a jurisdictional impediment to pursuit of his appeal." 532 U.S. 757, 765, 121 S.Ct. 1801, 1807, 149 L.Ed.2d 983 (2001). As a part of its decision, the Court observed:

> Civil Rule 11(a), in our view, cannot be sliced as amicus proposes. The rule was formulated and should be applied as a cohesive whole. So understood, the signature requirement and the cure for an initial failure to meet the requirement go hand in hand. The remedy for a signature omission, in other words, is part and parcel of the requirement itself. Becker proffered a correction of the defect in his notice in the manner Rule 11(a) permits-he attempted to submit a duplicate containing his signature, and therefore should not have suffered dis-

missal of his appeal for nonobservance of that rule.

*Id.* Besides just Rule 9011, a signature defect and its effect on jurisdiction also needs to be placed in a larger context.

Bankruptcy Rule 5005(a)(2) provides that a document filed by electronic means, when so required as here by local rule, constitutes a "written paper" for purposes of applying the Bankruptcy Rules.[5] This may be termed "the electron equals paper rule." Thus, when all the layers are removed, the issue of electronic filing, and its maze of procedural rules and protocols, is somewhat misleading. Rather, the underlying question presented in this matter by the UST is really one of whether the lack of a debtor's physical signature on a petition, whether filed by paper or electronically, constitutes a jurisdictional defect. Stated differently, if the lack of a debtor's signature on a petition was not a jurisdictional defect then (pre-electronic filing), it should not be now (post-electronic filing). It is in this way that the position taken by the UST completely runs aground.

In the absence of an intent to the contrary, a defect in a procedural rule will not deprive a court of jurisdiction. *See* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1339. It has thus been held for some time that as it concerns a bankruptcy petition "imperfect verification is not a jurisdictional defect" and that an "amendment may cure imperfect verification[.]" *In re Royal Circle of Friends Bldg. Corp.,* 159 F.2d 539, 541 (7th Cir. 1947). More recently, this same conclusion was reached, with it being decided that when a bankruptcy petition is not properly verified, the "absence of proper

5. In full, Bankruptcy Rule 5005(a)(2) provides:

A document filed by electronic means in compliance with a local rule constitutes a

written paper for the purpose of applying these rules, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code.

verification does not deprive a bankruptcy court of jurisdiction over the petition." *Paccar Fin. Corp. v. Mid–American Lines, Inc. (In re Mid–American Lines, Inc.)*, 178 B.R. 514, 516 (D.Kan.1995).

Additionally, these decisions are actually just a subset of a larger group of cases which hold that any defect in a petition, even those not involving verification, will not alone be jurisdictionally fatal. For example, in *In re Lagniappe Inn of Nashville*, the bankruptcy court held that it was not deprived of jurisdiction where, in direct violation of Bankruptcy Rule 1005, there existed a defect in the caption of a bankruptcy petition. 50 B.R. 47 (Bankr. M.D.Tenn.1985). Likewise, a debtor's failure to set forth in their petition the Chapter of the Code under which they are seeking relief is not a jurisdictional defect. *Mullis v. United States Bankr.Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1389 (9th Cir.1987).

Cumulatively then, these decisions demonstrate that a procedural violation of a Bankruptcy Rule, let alone an administrative protocol, even when involving a document's verification, is alone an insufficient basis for granting a motion to dismiss for lack of jurisdiction. *In re Aspen Healthcare, Inc.*, 265 B.R. 442, 447 (N.D.Cal.2001), *citing Fitzsimmons v. Nolden*, 920 F.2d 1468, 1472 (9th Cir.1990). This just makes sense. First, rules of procedure are promulgated by the courts, and thus it would be a rather odd situation if a court were deprived of jurisdiction solely because of a party's violation of the court's own rules. In a similar way, the remedy of dismissal for the failure to physically sign a petition leads to a rather anomalous outcome: a debtor's ability to obtain relief from this Court would be dependent upon an event taking place, whose occurrence will never become a part of the record in the case.

Additionally, and as a more practicable matter, a contrary holding would leave the bankruptcy system dangerously open to manipulation. This is particularly true in a Chapter 7, where a debtor has no right to dismiss their case, but where this requirement could be easily bypassed simply through the convenient *"loss"* of the *"unsigned"* petition by the debtor's attorney. Additionally, as it regards the manipulation of the bankruptcy process, it is observed that for criminal violations of the Bankruptcy Code, a debtor is defined as that "concerning whom a petition is filed under title 11." 18 U.S.C. § 151. Thus, carrying the UST's position to its logical conclusion,—that an unverified petition is not a legally effective petition, thereby depriving a court of jurisdiction—a person who never signs their petition could viably argue that they are not a debtor for purposes of the commission of a bankruptcy crime. Clearly, neither of these results could have been the intent of the Congress of the United States when it conferred Title 11 jurisdiction to the bankruptcy courts and the district courts.

For all these reasons then, this Court cannot accept the UST's position that the lack of debtor's signature on a petition, whether filed by paper or electronically, deprives this Court of jurisdiction over the case. The only two cases cited to by the UST as support for its position do not contradict this position: *In re Wenk*, 296 B.R. 719 (Bankr.E.D.Va.2002); *Briggs v. LaBarge (In re Phillips)*, 317 B.R. 518 (8th Cir. BAP 2004). While both these cases involved an attorney filing a petition without a debtor's proper signature, the issue before the courts was not one of jurisdiction, but rather the appropriateness of sanctions. Moreover, a reading of these cases shows that although sanctions were imposed, jurisdiction seems to have been assumed.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss, be, and is hereby, DENIED.