In re Thomas E. COWAN, Jr., Esq. BPR No. 002026.

No. 1:08–mc–3.

United States District Court, E.D. Tennessee, at Chattanooga.

March 17, 2009.

Thomas E. Cowan, Jr., Cowan & Land-street, PC, Elizabethton, TN, pro se.

## MEMORANDUM & ORDER

CURTIS L. COLLIER, Chief Judge.

██ Attorneys practicing law in the Eastern District of Tennessee are held to certain requirements and standards separate from those imposed by state regulatory bodies. *See In re Moncier*, 550 F.Supp.2d 768, 769–70 (E.D.Tenn.2008). The vast majority of lawyers who appear in the federal courts in the District conduct themselves admirably. While rare, when attorneys fail to conduct themselves professionally to the detriment of the judicial system and the public, it is incumbent upon the judges in the District to enforce these standards. *Id.* Such is the situation currently before the Court. For the following reasons, the Court adopts the recommendation of United States Bankruptcy Judge Marcia Phillips Parsons and determines Respondent Thomas E. Cowan should be disciplined.

## I. PROCEDURAL HISTORY AND BACKGROUND

On August 25, 2008, the Court, after receiving information regarding potentially unethical conduct, issued a show cause order, which initiated formal disciplinary proceedings against Respondent Thomas E. Cowan ("Cowan") pursuant to E.D.TN. L.R. 83.7 (Court File No. 2). Upon receiving Cowan's response denying misconduct and requesting dismissal of the action (Court File No. 4), the Court appointed Judge Parsons to investigate the allegations and issue recommendations (Court File No. 5). Cowan declined a hearing on the matter and on February 5, 2009, Judge Parsons issued her recommendations (Court File No. 6). Upon investigating the allegations, Judge Parsons determined Co-

wan should be suspended from the practice of law in the Eastern District of Tennessee for six months based on his violation of Federal Rule of Bankruptcy Procedure 2016(b) and his delay in filing bankruptcy cases for his clients in a timely manner. In addition, Judge Parsons recommended denying Cowan's motion to dismiss the action.

In November 2007, Cowan entered into an agreement with the Tennessee Board of Professional Responsibility to settle disputes on a pending disciplinary action. As part of the settlement, Cowan would be suspended from the practice of law for a period of three months, from December 15, 2007, to March 15, 2008. Cowan wrote letters to clients under the impression he was suspended. However, on May 13, 2008, the Tennessee Supreme Court rejected the settlement and, thus, Cowan's license to practice law in Tennessee was valid during the three months he believed he was suspended.

The United States Trustee, in reviewing newly filed bankruptcy cases, determined Cowan's actions in seven bankruptcy cases warranted investigation. After examining the debtors in these cases, the United States Trustee filed a motion seeking disgorgement of fees paid by these debtors to Cowan and [another person].* Cowan agreed to disgorge the fees and settled the dispute with the United States Trustee.

In August 2008, Cowan was ordered to show cause why he should not be disciplined for his conduct in the seven bankruptcy cases. Specifically, the Court asked Cowan to respond to allegations he had engaged in the practice of law while under suspension by the state of Tennessee, he accepted fees from clients during the period of suspension, he used another attorney as a "front" while under suspension, he charged clients more than the fee

disclosed in bankruptcy filings, he erroneously informed clients as to when to obtain credit counseling, he failed to file clients' cases in a timely manner, he placed electronic signatures of clients on documents the clients had never signed, he acted in an unprofessional and unethical manner, and he violated the Rules of Professional Conduct. Cowan responded to the Order, alerting the Court to the fact the Tennessee Supreme Court had rejected the settlement and he erroneously believed he was suspended when, in fact, he was not under suspension from December 2007 to March 2008. He denied all allegations contained in the show cause order.

Judge Parsons carefully investigated each allegation and determined two of the allegations were supported by "clear and convincing evidence" as required by E.D.TN. L.R. 83.7(h)(4). In addition, she recommended the motion to dismiss the proceeding be denied. Cowan responded to these findings within the ten days provided by E.D.TN. L.R. 83.7(i)(2).

## II. DISCUSSION

Cowan objects to Judge Parsons's recommendation to deny the motion to dismiss and to discipline him for violating Rule 2016(b) and failing to file cases in a timely manner.

### A. Motion to Dismiss

Cowan argues the disciplinary proceeding against him should be dismissed because he and the United States Trustee entered into a settlement of the same issues arising out of his actions in the seven bankruptcy cases. As part of the agreement, the United States Trustee agreed not to pursue any further adverse action. Since the United States Trustee filed a motion for an order to show cause regard-

---

* The language in brackets has been redacted.

ing attorney discipline against Cowan, which he contends is in violation of the agreement, he asserts the appropriate remedy is dismissal of the proceeding.

■ E.D.TN. L.R. 83.7(b) provides:

Formal disciplinary proceedings shall be initiated by the issuance of an order to show cause signed by the Chief Judge. An order to show cause may be issued by the Chief Judge on his or her own initiative or upon complaint filed by any such counsel of record or party to an action in this court.

Since disciplinary proceedings can only be initiated by the Chief Judge, whether sua sponte or upon receipt of a meritorious complaint, any agreements between the parties are irrelevant. Once the Chief Judge determines reasonable grounds exist for attorney misconduct, the Court's authority to discipline the members of the bar of the Eastern District of Tennessee is invoked. As outlined in Rule 83.7, the only basis for dismissal of a complaint once disciplinary proceedings have been initiated is the Chief Judge's determination the complaint is without merit. E.D.TN. L.R. 83.7(c) (1) and (e). Since Cowan has not shown the complaint is without merit, the proceeding will not be dismissed.

■ Moreover, attorneys are under an affirmative obligation not to conceal unethical behavior on the part of their colleagues. Tenn. Sup.Ct. R. 8, RPC 8.3(a). While it is appropriate for attorneys to agree to forego further legal action, it would be against the ethical obligations of the legal profession to agree to conceal discovered unethical conduct. *Id.*

## B. Federal Rule of Bankruptcy Procedure 2016(b)

Federal Rule of Bankruptcy Procedure 2016(b) implements 11 U.S.C. § 329, which requires "any attorney representing a debtor in a case under this title ... [to] file with the court a statement of the compensation paid or agreed to be paid." 11 U.S.C. § 329(a). The disclosure statements filed in the relevant cases revealed $750 was paid to Cowan for services in the bankruptcy cases. However, each debtor actually paid more than what was disclosed. Cowan asserts he did not discover the discrepancies until his appearance at the § 341 meetings in each case (held in April 2008). He did not correct the statements until August 4, 2008.

[4] Cowan disputes Judge Parsons's reading of Rule 2016(b), arguing he was not under an affirmative duty to file a supplemental disclosure statement because he was not the attorney of record for the debtors.[1] This argument, however, is precluded by the plain language of 11 U.S.C. § 329 and case law from the Court of Appeals for the Sixth Circuit. *See In re Downs,* 103 F.3d 472, 477 (6th Cir.1996) (finding the fact the attorney was not counsel on the date of the filing irrelevant to the application of the statute). Section 329 requires "[a]ny attorney representing a debtor in a case under this title ... file with the court a statement of the compensation paid or agreed to be paid." The obligation attaches when a lawyer receives payment from a debtor for the provision of services in connection with a bankruptcy and is in no way limited to attorneys who are counsel of record. The purpose of the requirement is to "protect both creditors

---

1. From the letter written by Cowan to his clients (Court File No. 1) and the facts of their cases, it is apparent that although [another person] was listed as attorney of record, in fact Cowan was the attorney and [another person] was not actually involved in the cases other than just permitting his name to be used. Thus, this argument is disingenuous since Cowan behaved as though he was, in all but name, counsel of record.

and the debtor against overreaching attorneys." *In re Kisseberth,* 273 F.3d 714, 721 (6th Cir.2001). While courts have refused to extend the obligation to debtor's attorneys who render services unrelated to bankruptcy, *see e.g. In re Triple S Rests. Inc.,* 306 B.R. 191, 196 (W.D.Ky.2004) (finding an attorney who provided services for a corporation prior to bankruptcy was not bound by the disclosure requirements), Cowan points to no case supporting a distinction based on whether the lawyer is the attorney of record in the bankruptcy. The testimony of the debtors clearly indicates each paid Cowan and received services related to their bankruptcies from him.

Cowan had a continuing obligation under § 329 as implemented by the Federal Rules of Bankruptcy Procedure 2016(b) and 2017 to "disclose fully and completely all fee arrangements and payments." *In re Kisseberth,* 273 F.3d at 720. It is undisputed the disclosure statements, which revealed only $750 for services rendered, were inaccurate and incomplete. Cowan, as an attorney who received payments from the debtors in connection with their bankruptcy proceedings, had an unconditional duty to disclose the full amounts paid. The disclosure statements violated Rule 2016(b) when filed and Cowan continued to violate the Rule by failing to supplement the statements to correct the fee. The ongoing violation of Rule 2016(b) in seven bankruptcy cases is grounds for discipline.

### C. Failure to Act with Reasonable Diligence and Promptness

Judge Parsons found Cowan violated Rule 1.3 of the Tennessee Rules of Professional Conduct, as adopted by the Eastern District of Tennessee. E.D.TN. L.R. 83.6. Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." In the seven bankruptcy cases at issue in this proceeding, Cowan waited from several months to al-

most a year to file bankruptcy after receiving payment and agreeing to represent clients. As the cases were not complex, Cowan should have been able to file bankruptcy within a few weeks. In one case, the debtor testified Cowan told her it would take three to four weeks when it actually took Cowan nearly a year to file bankruptcy. The majority of the debtors in the seven cases were surprised by the length of time taken in filing their bankruptcy cases.

Cowan attempts to excuse the delay by explaining that his office was in the middle of a transition to electronic filing and his office notifies creditors that a bankruptcy is being prepared. Judge Parsons found this did not justify the length of the delay in the seven cases. As the Tennessee Supreme Court recently reiterated, "an attorney's exercise of reasonable diligence and promptness is the cornerstone of ethical conduct." *Nevin v. Bd. of Prof'l Responsibility,* 271 S.W.3d 648, 656 (Tenn. 2008). Because of the attorney's superior knowledge and experience in legal proceedings, the client is at the lawyer's mercy in the expedient progression of the case. Cowan's failure to expeditiously file bankruptcy for his clients was a violation of the duty to exercise reasonable diligence and promptness. This violation is grounds for discipline.

### III. DISCIPLINE

Having determined Cowan's conduct was unethical, the Court must determine what disciplinary action is warranted. Judge Parsons recommended a six-month suspension from the practice of law in the Eastern District of Tennessee.

### A. Aggravating Factors

The Court, as was Judge Parsons, is disturbed by Cowan's failure to admit any wrongdoing. One of the purposes of disci-

pline is to impress upon the disciplined attorney the importance of bringing his or her conduct in line with the standards and expectations of the bar of the Eastern District of Tennessee. Instead of taking responsibility for his actions in the proceedings, Cowan denies any obligation to notify the Bankruptcy Court of erroneous filings and attempts to justify the unreasonable delays in filing his clients' cases. Cowan's lack of remorse weighs heavily against him in this proceeding. *In re Moncier,* 550 F.Supp.2d at 809. He shows a willingness to cast the blame on others and a disregard for the seriousness of his offenses. When he believed he would be suspended from the practice of law, in his letter to his clients he downplayed the severity of the charges, asserting that although he "successfully complet[ed] over two-hundred cases for understanding clients," the *"subjective* expectations" of some clients had not been met, and, as a result, he was sanctioned for inadequate communication (Court File No. 1). In addition, he laid blame for the inadequacy of his communications to his clients on the absences and subsequent death of his secretary and the illness of his daughter, which led Cowan to be absent from work. The refusal to take responsibility for the deficiencies in his practice is directly at odds with Cowan's obligations to his clients. The Rules of Professional Conduct clearly assign sole responsibility for ethical conduct to the attorney. An attorney's duties to the client are unchanged by the existence of external factors. Cowan's attempts to excuse his behavior signify a complete lack of remorse for his unethical conduct.

Cowan's substantial experience in the practice of law is an aggravating factor because it indicates he should be well aware of applicable expectations and standards. Cowan has been licensed in Tennessee since 1968.

The snapshot of seven cases in this proceeding indicated multiple ethical offenses. While a single instance of a failure to fully report the fee received from a debtor might warrant a lesser sanction, here Cowan failed to adequately disclose the fee agreement in seven cases and did not supplement the disclosures to reveal the full amount until August 4, 2008, which was after the United States Trustee notified Cowan of the erroneous statements and filed motions to disgorge. Cowan also attempted to evade the consequences of his believed suspension by using [another person] to shield his practice of law. While not grounds for discipline, such conduct demonstrates a flagrant disregard for ethical standards.

In addition to the numerous transgressions in the seven bankruptcy cases investigated in this proceeding, Cowan's history evidences a pattern of misconduct. Board of Professional Responsibility of the Supreme Court of Tennessee, Attorney Details for Thomas Ewing Cowan Jr., http://www.tbpr.org/Consumers/AttorneySearch/AttorneyDetails.aspx?BPR=002026 (last visited March 9, 2009). On November 28, 1991, Cowan was publicly censured following three complaints, including an allegation of an excessive fee and an allegation of neglect in a case. On June 22, 1995, Cowan was publicly reprimanded after being found in contempt of the Carter County Chancery Court. On February 16, 2000, Cowan was publicly censured for not having an internal diary system, which caused him to neglect a client's case. On December 19, 2002, Cowan's license to practice law in Tennessee was suspended for 30 days following a finding of contempt after he repeatedly failed to timely submit divorce judgments for signature and failed to timely file the judgments. Other proceedings are listed that have not been publically released or concluded. Such an extensive pattern of misconduct indicates a

reprimand or warning would be insufficient to compel Cowan to rectify his behavior. Cowan has repeatedly failed to remedy the inadequacies in his practice that result in case mismanagement and ethical violations. This factor weighs strongly against him.

### B. Mitigating Factors

Cowan's actions in the proceedings were the result of negligence, not intentional misconduct. Although Cowan increased the base attorney's fee for filing a Chapter 7 bankruptcy fee from $750 to $1,000, he did not change the default setting for the fee disclosure form in his office's software system. In addition, Cowan apparently was unaware the disclosure statements were incorrect until he attended the § 341 meetings in each case. While attorneys are strictly liable for violations of Rule 2016(b), the absence of bad faith is a mitigating factor in determining the appropriateness of discipline. Again, the delay in filing his clients' bankruptcy cases is attributable to office mismanagement rather than intentional misbehavior. Cowan asserts the office had difficulty in making the transition to electronic filing, which caused some delay during the time period at issue in this proceeding.

### C. Appropriate Discipline

■ In determining the appropriateness of discipline, the Court also compares Cowan's conduct with other attorneys who have been suspended by the Court. John Anderson (*In re Anderson*, 1:09–mc–1, Court File No. 7) and Herbert Moncier (*In re Moncier*, 550 F.Supp.2d 768, 1:08–mc–9, Court File No. 69) were both suspended for failure to obey a direct court order. Disregarding an order of the court is a serious ethical violation, for which neither attorney expressed remorse. As a result,

Anderson was suspended for a period of five years, with application for early reinstatement allowed after two years of suspension. Moncier was suspended for a period of seven years, with application for early reinstatement permitted after three years of suspension. Failing to fully disclose the fee paid for the attorney's services and failing to file clients' cases in a timely manner demonstrate serious issues of competency, but, where a court has already stepped in, via a direct order, to protect the professional standards of the District, an attorney's disregard of that order is among the most egregious of ethical violations. Thus, comparatively, Cowan is less culpable than Anderson and Moncier.

Upon weighing the aggravating and mitigating factors in this case, the Court finds suspension[2] is necessary to impress upon Cowan the importance of conforming his professional conduct with the standards of the Eastern District of Tennessee, to protect the public, and to deter Cowan and other attorneys from engaging in similar conduct. It is clear Cowan has serious deficiencies in law office management and these deficiencies must be corrected. To fulfill these objectives, the Court will suspend Cowan from the practice of law for a period of six months effective immediately and will place him on probation for a year following suspension.

### IV. CONCLUSION

The Court finds Cowan has engaged in unethical conduct and violated the Tennessee Rules of Professional Conduct. For this reason, the Court deems it in the public interest to suspend Respondent from the practice of law in this district. His conduct has fallen below that required of members of the bar of the Eastern

---

**2.** This Court has explained what a suspension in the Eastern District of Tennessee entails.

*In re Moncier,* 569 F.Supp.2d 725 (E.D.Tenn. 2008).

District of Tennessee, and has called into question his fitness to continue as a member of the bar of the Eastern District of Tennessee. Permitting an attorney who refuses to accept the ethical and professional obligations of members of the bar of this court to continue as a member of this bar poses an immediate danger to the public, the bar, and this court. The Court therefore will accept and adopt Judge Parsons's Recommendation.

Accordingly, the Court **ACCEPTS** and **ADOPTS** Judge Parsons's Recommendation (Court File No. 6) and **ORDERS:**

(1) Effective immediately, Cowan is **SUSPENDED** from the practice of law in the United States District Court for the Eastern District of Tennessee (all divisions and all units, including the Bankruptcy Court) for a period of six months. While under suspension, Cowan shall obtain training in office management;

(2) Cowan is placed on **PROBATIONARY STATUS** following his suspension for a period of one year, during which he shall be subject to the following conditions:

> a) During the probationary period, Cowan shall file a written report with the Court informing the Court of the steps he has taken to correct the deficiencies in his law office management; and

> b) Cowan shall cooperate with the Court, any designee of the Court, and the Tennessee Board of Professional Responsibility in any attorney disciplinary action that might be pursued by the Court or the Tennessee Board of Professional Responsibility.

**SO ORDERED.**

### RECOMMENDATION

MARCIA PHILLIPS PARSONS,
United States Bankruptcy Judge.

On August 25, 2008, the United States District Court for the Eastern District of Tennessee, speaking through Chief Judge Curtis L. Collier, entered a Show Cause Order initiating formal disciplinary proceedings against Respondent Thomas E. Cowan, Jr., an attorney admitted to practice before the United States District Court for the Eastern District of Tennessee. According to the Show Cause Order, it had come to the court's attention that Respondent may have committed ethical violations in his representation of certain clients in bankruptcy court. The Show Cause Order directed the Respondent to show cause within twenty days why disciplinary action should not be taken against him. On September 15, 2008, the Respondent filed a Response to the Show Cause Order, wherein he denied in part the allegations set forth in the order and requested that the court dismiss the order. Upon determining that the Response did not disclose that the Show Cause Order was without merit, the court entered an order on September 18, 2008, pursuant to E.D.TN. LR. 83.7(g), appointing this officer to "investigate the allegations of the show cause order and the response[,] . . . review all sealed documents related to the show cause order, conduct hearings if necessary, and issue a written recommendation." Accordingly, the following report is submitted, with the recommendation that Respondent be suspended from practice before the United States District Court for the Eastern District of Tennessee for a period of six months. Also, for the reasons stated, the recommendation is made that disciplinary proceedings be initiated against attorney J. Collins Landstreet II.

### I. *Show Cause Order*

The Show Cause Order states that the Respondent was suspended from the practice of law by the state of Tennessee from approximately December 2007 until March 2008, and that during this period, the following seven bankruptcy cases were filed

in the United States Bankruptcy Court for the Eastern District of Tennessee in Greeneville:

| In re Rebecca L. Bales | Case No. 08–50357 |
|---|---|
| In re Norman Dayton Markland | Case No. 08–50373 |
| In re Billy Joe Shepherd and Sandra Jane Shepherd | Case No. 08–50366 |
| In re Chad Markland and Tammany Celesta Markland | Case No. 08–50365 |
| In re Debra Jeanette Glines | Case No. 08–50364 |
| In re Benjamin Earl Bishop and Krisna Jean Bishop | Case No. 08–50661 |
| In re Steven Lee Rasnick and Nina Jo Rasnick | Case No. 08–50358 |

According to the Show Cause Order,

it appears that Respondent may have represented [these debtors] notwithstanding his suspension; may have procured another attorney to lend his name to the cases; may have charged the clients more than the fee disclosed in the bankruptcy disclosure statements filed with the court; may have erroneously advised the clients they would have 15 days after the bankruptcy filing to obtain credit counseling rather than the required pre-bankruptcy counseling; may have failed to file the clients' cases in a timely manner; and may have caused to be placed on petitions, schedules, and the like, electronic signatures of the clients even though the clients had never signed the documents purportedly bearing their signatures.

The Show Cause Order noted that in connection with the seven bankruptcy cases, the United States Trustee examined the debtors in these cases under oath on April 22, 2008, and that following these examinations, the United States Trustee filed a motion seeking the disgorgement by Respondent and attorney J. Collins Landstreet II of the fees paid to them by these debtors.

Based on the foregoing, the Show Cause Order directed Respondent to show cause within twenty days why disciplinary action should not be taken against him. The Show Cause Order further directed, in accordance with E.D.TN. LR 83.7(d), that any response filed by the Respondent must contain, *inter alia,* the following:

A specific admission or denial of each of the factual allegations contained in the order to show cause and, in addition, a specific statement of any facts on which respondent relies, including all other material dates, places, persons, and conduct relevant to the allegations of the order, specifically:

(a) that Respondent engaged in the practice of law in this district while under suspension by the state of Tennessee;

(b) that Respondent accepted fees from and provided legal representation to clients regarding bankruptcy matters after December 20, 2007, and before March 15, 2008;

(c) that Respondent, while suspended, procured another attorney to lend his name to the cases filed in bankruptcy court in this district although Respondent actually performed the legal services and represented the clients;

(d) that Respondent charged the clients more than the fee disclosed in the bankruptcy disclosure statements filed with the court;

(e) that Respondent erroneously advised the clients they would have 15 days after the bankruptcy filing to obtain credit counseling rather than the required pre-bankruptcy counseling;

(f) that Respondent failed to file the clients' cases in a timely manner;

(g) that Respondent caused to be placed on petitions, schedules, and the like, electronic signatures of the clients even though the clients had never signed the documents purportedly bearing their signatures;

(h) that Respondent acted in an unprofessional and unethical manner; and

(i) that Respondent violated the Rules of Professional Conduct;

Lastly, the Show Cause Order directed that any response filed by the Respondent contain (1) all documents relevant to the alleged misconduct; (2) a specific request for a hearing or a statement specifically declining a hearing; and (3) a statement signed by the Respondent under the penalty of perjury indicating that he had read the response and that the facts alleged therein were correct to the best of Respondent's knowledge.

## II. *Response to Show Cause Order*

The Response filed by the Respondent on September 15, 2008, is signed by him under penalty of perjury, and he specifically declines therein a hearing in this matter. Generally speaking, the Response is divided into two sections: the first is entitled "Motion To Dismiss," and the second is entitled "Answer." In the Motion to Dismiss section, the Respondent explains that on November 30, 2007, pursuant to an agreement between him and the Tennessee Board of Professional Responsibility, an order was lodged in the Supreme Court of Tennessee to settle disputed issues in a pending disciplinary action, which settlement would have involved the Respondent's three-month suspension from practice from December 15, 2007, through March 15, 2008. Respondent states that notwithstanding this agreement, the Supreme Court of Tennessee by order filed May 13, 2008, rejected the settlement without explanation and remanded the matter to the Board. As a result, the Respondent states, the anticipated suspension never took place.

The Respondent attaches to the Response a copy of a June 5, 2008 letter from him to Patricia Foster, attorney for the United States Trustee, wherein he advised that her proposal to resolve the dispute with the United States Trustee by disgorging the fees paid by the debtors was ac-

cepted, and that the United States Trustee "will not object to any of the above debtors' discharges, nor file any motion to dismiss or seek any other sanctions in any of the above cases, nor take any other adverse actions relative to these cases." The Respondent states that by return letter dated June 6, 2008, a copy of which he also attaches, Ms. Foster accepted on behalf of the United States Trustee the settlement offer set forth in his letter. Based on the fact that he was not suspended during the pendency of the bankruptcy cases and that "the U.S. Trustee's office was precluded by its agreement of June 6, 2008 from initiating this action against Respondent," the Respondent asserts that the Show Cause Order should be dismissed.

In the Answer section of his Response, the Respondent states that his factual allegations regarding the suspension establish that "he did not engage in the practice of law during the period December 20, 2007 to March 15, 2008, in regard to these seven bankruptcy cases while under suspension of the State of Tennessee for the simple reason that his license was not suspended during this period." As to the allegation that he charged debtors a fee larger than the one disclosed to the court, Respondent states that he previously charged clients a flat attorney fee of $750 for filing chapter 7 cases and that, therefore, the fee disclosure form in his software program had a default setting of $750. Respondent states that he increased his standard fee to $1,000 after completing electronic filing training, but failed to change the default setting on his software, such that the fee disclosure statement filed in the subject cases was erroneous, an error that was not discovered until the meetings of creditors.

As to whether he erroneously advised the debtors that they would have 15 days after the bankruptcy filing to obtain credit counseling rather than the required pre-

bankruptcy counseling, the Respondent expressly denies that he ever gave such advice. He states that each client was informed during the initial office consultation that the counseling was required before filing. He also points out that his December 20, 2007 letter to each debtor in which he informed them of the upcoming suspension also advised them of the counseling requirement, enclosed a list of providers, and expressly discussed the services provided by Consumer Credit Counseling, the first entity on the list. According to Respondent, "it would be impossible for anyone to interpret this detailed advice concerning counseling as advice that clients would have 15 days after the bankruptcy filing to obtain credit counseling." According to Respondent, "[t]he confusion concerning a 15 day period results from Exhibit 'D' [to the petition] providing that debtors are given 15 days after filing of a case to file the certificate of completion of 'Pre–Bankruptcy' counseling."

Respondent expressly denies that he failed to file the debtors' bankruptcy cases in a timely manner. He notes:

[I]in this particular series of cases, our office was transitioning to electronic filing requiring course instruction, new software, and a period of familiarization with the new program, all of which was accomplished within the period contemplated. In addition, it is our office practice to confirm to creditors that a debtor is in the process of filing bankruptcy, which was done in these cases so that no client had any adverse financial consequences during the period prior to filing.

Respondent also expressly denies that he "caused electronic signatures to be placed on petitions, schedules, and the like, of clients who had not signed the documents." As evidence of this denial, Respondent attaches to his Response copies of the petition and signature pages of the debtors in each of the seven cases.

Lastly, without further amplification, Respondent denies that he "acted in an unprofessional and unethical manner or violated the Rules of Professional Conduct."

### III. Show Cause Motion

A review of the sealed documents pertaining to this matter reveal that the allegations regarding Respondent's conduct in the seven bankruptcy cases came to the court's attention because of a Motion For An Order To Show Cause Regarding Attorney Discipline Under Local Rule 83.7 ("Show Cause Motion") filed by the United States Trustee on August 6, 2008. The allegations that the court's Show Cause Order direct the Respondent to address in his Response were derived from the statements in the Show Cause Motion.

According to the Show Cause Motion, each of the debtors in the seven specified bankruptcy cases retained and paid Respondent to file a bankruptcy case on his or her behalf. However, prior to the filing of each case, Respondent advised each individual by letter dated December 20, 2007, that he had reached an agreement with the Tennessee Board of Professional Responsibility to suspend his legal practice until March 15, 2008, and that during his suspension they would be represented by his law partner, Collins Landstreet, unless they otherwise objected. A copy of the December 20, 2007 letter is attached to the Show Cause Motion.

According to the Show Cause Motion, the bankruptcy cases for these individuals were filed on either March 4 or 5, 2008, during Respondent's suspension period, with Landstreet listed as attorney of record. The United States Trustee alleges that the debtors never met Landstreet; the only attorney they ever dealt with was Respondent. Although not spelled out in the Show Cause Motion, the logical infer-

ence from these allegations is that Respondent continued to represent the debtors, regardless of his suspension, and the alleged representation by Landstreet was a subterfuge, designed to circumvent the suspension.

In addition to the suggestion that Respondent continued to practice law while suspended, the United States Trustee asserts in the Show Cause Motion that Respondent's representation of the debtors in other respects failed to comport with the rules of professional conduct. According to the United States Trustee, the following misconduct occurred:

A. Respondent erroneously advised the debtors that they would have 15 days after their bankruptcy filing to obtain credit counseling rather than the required pre-bankruptcy counseling. As a result, the cases were filed without the debtors having obtained prepetition credit counseling, a prerequisite to bankruptcy eligibility. Despite the failure to obtain prepetition counseling, counsel filed on behalf of the debtors a statement representing that they had in fact obtained the credit counseling within 180 days prior to the bankruptcy filing.

B. In all cases but one, the Federal Rule of Bankruptcy Procedure 2016 disclosure of compensation statement filed understated the amount of compensation actually paid by the debtors to Respondent.

C. Contrary to the local rules of the bankruptcy court, the bankruptcy petitions, schedules and statements were filed by counsel before they were actually signed by the debtors, although the filed documents set forth signatures in the form of a "/s/" followed by the typed name of the debtors, thereby representing that they had in fact been signed before filing.

D. The bankruptcy cases were not timely filed since in some there were delays of several months between the time that the debtors paid the legal fees to the Respondent and the cases were actually filed.

The Show Cause Motion indicates that the factual bases for these allegations are the debtors' testimonies at the 11 U.S.C. § 341 meetings of creditors held on April 2, 2008, and the Federal Rule of Bankruptcy Procedure 2004 examinations held on April 22, 2008. The testimonies of each debtor are summarized in the Show Cause Motion, and digital recordings of the examinations are attached to the Show Cause Motion. Respondent appeared at each of these meetings and examinations as counsel for the various debtors.

The United States Trustee states that after the Rule 2004 examinations, Respondent finally provided faxed copies of the petitions actually signed by the debtors. The United States Trustee alleges that the typed dates shown on the petitions, purporting to indicate when the debtors signed the petitions, are inconsistent with the testimonies of the debtors. In one case, the typed date is a date after the case was filed, establishing that the debtors in that case did not sign the petition until after the case was filed.

According to the Show Cause Motion, when the deficiencies in these cases came to the attention of the United States Trustee, that office filed on June 6, 2008, a motion in the bankruptcy court requesting that Respondent and Landstreet be ordered to disgorge the fees they had been paid in each of these cases ("Disgorgement Motion"). The Disgorgement Motion was set for hearing before the bankruptcy court on July 8, 2008.

Prior to this scheduled hearing, Respondent contacted the United States Trustee and advised that he agreed to the disgorgement of the fees in these cases and

that the United States Trustee could place his signature on an agreed order resolving the Disgorgement Motion. Neither Respondent nor Landstreet attended the scheduled hearing, and the agreed order was entered on July 21, 2008, providing that the fees would be disgorged to the debtors within 14 days. On August 8, 2008, Landstreet filed an Amended Disclosure of Compensation Statements in each of the debtors' cases evidencing that fees previously received from the debtors had been refunded.

According to the Show Cause Motion, the Respondent's conduct in these cases establish violations of the Tennessee Rules of Professional Conduct, specifically Rule 1.1 Competence, Rule 1.3 Diligence, Rule 1.4 Communication, and Rule 8.4 Misconduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. *Discussion*

It has long been established that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing *Ex Parte Burr,* 9 Wheat. 529, 531, 6 L.Ed. 152 (1824)). By local rules, the district court for the Eastern District of Tennessee has adopted procedures for disciplining members of its bar who violate its standards. E.D.TN. LR 83.6 and 83.7. In part, Local Rule 83.7(a) states:

**Conduct Subject to Discipline.** The court may impose discipline on any member of its bar who has violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee, or has engaged in unethical conduct tending to bring the court or the bar into disrepute. The court may also discipline any member who has been suspended or disbarred from the practice of law by the state in which he or she is a member, or by any court of

record. Discipline which may be imposed includes disbarment, suspension, reprimand, or such other further disciplinary action as the court may deem appropriate and just.

"By its text, the rule authorizes disciplinary actions against a member of the Eastern District of Tennessee bar who has (1) violated the Rules of Professional Conduct, or (2) engaged in unethical conduct tending to bring the court or the bar into disrepute." *In re Moncier,* 550 F.Supp.2d 768, 773 (E.D.Tenn.2008). Because the rule is in the disjunctive, a violation of either prong is sufficient to warrant the imposition of discipline. *Id.*

As the instant case illustrates, formal disciplinary proceedings under the local rules of court are initiated by the issuance of an order to show cause signed by the Chief Judge. E.D.TN. LR 83.7(b). Such an order may be issued by the Chief Judge on his initiative or upon a complaint filed by any counsel of record or a party of an action in this court. *Id.* The show cause order sets out the alleged misconduct so as to afford the attorney in question a full and fair opportunity to deny, correct, or explain the allegations. *In re Moncier,* 550 F.Supp.2d at 774. The local rules require a response from the attorney within twenty days of the entry of the show cause order. E.D.TN. LR 83.7(c)(2). This response must contain certain specific requirements, namely:

(1) The name, address and telephone number of the respondent.

(2) A specific admission or denial of each of the factual allegations contained in the complaint and order to show cause and, in addition, a specific statement of any facts on which respondent relies, including all other material dates, places, persons, and conduct relevant to the allegations of the order.

(3) All documents or other supporting evidence not previously filed with the

complaint or order that are relevant to the charges of alleged misconduct.

(4) A specific request for a hearing or a statement specifically declining a hearing.

(5) A statement signed by the respondent under the penalty of perjury indicating that the respondent has read the response and that, to the best of respondent's knowledge, the facts alleged therein are correct.

E.D.TN. LR 83.7(d).

If the response filed by the attorney discloses that the allegations of misconduct are without merit, the Chief Judge may summarily dismiss the disciplinary proceedings. E.D.TN. LR 83.7(e). The local rules also authorize the Chief Judge, upon the filing of a response, to appoint a judicial officer from within the district to investigate the misconduct allegations. Such a judicial officer "shall review all sealed documents related to the disciplinary charges, conduct hearings if necessary, and issue a written recommendation." E.D.TN. LR 83.7(g). "The respondent's violation of the Rules of Professional Conduct or rule or orders of the court shall be proven by clear and convincing evidence." E.D.TN. LR 83.7(h)(4). The judicial officer's written recommendation must include a proposed disposition of the disciplinary charges. E.D.TN. LR 83.7(i). This recommendation is filed under seal with copies distributed to the court and the respondent. E.D.TN. LR 83.7(i)(1). The respondent then has ten days to file a written response to the recommendation, concisely setting forth "any inaccuracies, errors or omissions which warrant a disposition other than that recommended." E.D.TN. LR 83.7(i)(2). Thereafter, within thirty days of the filing of any exception to the recommendation, the court must enter a final order of disposition, which is sent to the respondent and complainant. E.D.TN. LR 83.7(j).

Before leaving this subject, this officer notes that notwithstanding the mandate in E.D.TN. LR 83.7(g) that the appointed judicial officer "conduct hearings if necessary," paragraph (h) of E.D.TN. LR 83.7 provides that "[a] disciplinary hearing shall be held only when the member under investigation has requested such a hearing in a timely response and the judge or the judicial officer has determined that such a hearing is necessary for the proper disposition of the charges." Because the sentence is written in the conjunctive, a straightforward reading of the sentence suggests that a hearing may be held *only* when both conditions in the sentence are present: (1) the attorney timely requests a hearing; *and* (2) the judicial officer determines that a hearing is necessary.

In the instant case, Respondent has expressly declined a hearing. Respondent states in his Response, "**Being aware of the provisions of E.D.TN. LR 83.7(d)(4), Respondent specifically declines a hearing.**" (Emphasis in original.) Because Respondent has not requested a hearing, this officer questions whether, under a plain reading of E.D.TN. LR 83.7(h), a hearing may still be held, even if this officer determines that one is necessary. Arguably, the hearing that the appointed judicial officer is authorized to conduct under paragraph (g) of E.D.TN. LR 83.7 in the context of the officer's investigation is distinct from the "disciplinary hearing" contemplated by paragraph (h) of the Rule. Yet the only hearing procedures set forth in the local rules are those set forth in paragraph (h) of Rule 83.7 for a "disciplinary hearing." If it is correct that a hearing may be held only if the Respondent timely requests a hearing *and* the judicial officer determines that one is necessary, the question arises as to how the judicial officer or the court can resolve any questions of fact

absent a hearing. Moreover, one questions whether an attorney who is the subject of a disciplinary proceeding can simply circumvent a hearing by not requesting one, thereby frustrating and potentially stymying the judicial officer's attempts to ascertain the truth of the allegations against the attorney.

Fortunately, this officer believes that it is unnecessary to resolve this difficult procedural issue in the instant matter because, for the most part, the significant factual issues can be resolved on the basis of the record. The record consists of the Show Cause Motion, which is sworn to under penalty of perjury by the Assistant United States Trustee, William R. Sonnenburg; the Response, which, as noted, is sworn to by the Respondent; the recordings of the 11 U.S.C. § 341 meetings and the Rule 2004 examinations, at which the debtors gave sworn testimony; and the filings in these bankruptcy cases, the majority of which are signed under oath by the debtors. Against this record, each of the allegations of misconduct set forth in the Show Cause Order will be addressed and evaluated.

Initially, however, this officer must consider Respondent's contention that the Show Cause Order should be dismissed because he settled the United States Trustee's complaints regarding his representation of the debtors by refunding the attorney fees paid to him. In this officer's view, the Respondent's motion to dismiss on this basis should be summarily rejected. Any agreement reached by the parties does not preclude the court from *sua sponte* initiating disciplinary proceedings against the Respondent when allegations of attorney misconduct are brought to the court's attention. *See* E.D.TN. LR 83.7(b).

Moreover, certain allegations in the Show Cause Order pertain to more than mere disputes between parties or inadvertent failures to comply with bankruptcy procedural requirements: they suggest, more egregiously, a fraud upon the court. It is well settled that "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers,* 501 U.S. at 44. In discussing this authority, the Supreme Court explained that "tampering with the administration of justice [by perpetrating a fraud upon the court] involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* Accordingly, this officer recommends denial of Respondent's motion to dismiss, and will proceed with an examination of each specific allegation of misconduct.

A. *Respondent engaged in the practice of law in this district while under suspension by the state of Tennessee.*

The only evidence of this assertion is an allegation by the United States Trustee in the Show Cause Motion to which is attached the Respondent's own December 20, 2007 letter to the debtors, in which he advised the debtors of his upcoming suspension arising out of his agreement with the Tennessee Board of Professional Responsibility. The Respondent states in his Response that he later learned that the Supreme Court of Tennessee rejected this settlement and remanded the matter to the Board, with the result that the suspension never materialized. This officer's independent inquiry to the Tennessee Board of Professional Responsibility also indicates that at no time during the past two years has the Respondent been suspended by the state of Tennessee, although it does appear that complaints are pending as the Response indicates. Accordingly, this officer concludes that the Respondent did not engage in the practice of law in this district while under suspension by the state of Tennessee.

B. *Respondent accepted fees from and provided legal representation to clients regarding bankruptcy matters after December 20, 2007, and before March 15, 2008.*

The Respondent does not specifically deny or admit this statement in his Response. He does state that "he did not engage in the practice of law during the period December 20, 2007 to March 15, 2008, in regard to these seven bankruptcy cases while under suspension of the State of Tennessee, for the simple reason that his license was not suspended during this period." Thus, Respondent does not deny that he practiced law during this time frame, only that he practiced law *while suspended.* Because Respondent was not under suspension by the state of Tennessee between December 20, 2007, and March 15, 2008, the mere fact that Respondent may have accepted fees from and provided legal representation to clients during this time period does not, standing alone, establish unethical conduct. Accordingly, this allegation provides no support for a finding of misconduct by Respondent. Nonetheless, if Respondent believed that he was suspended during this period of time, yet continued to practice law notwithstanding the belief, and covered up this practice by filing cases under the name of another attorney, then the Respondent is guilty of a fraud upon the court. This is the next allegation in the Show Cause Order.

C. *Respondent, while suspended, procured another attorney to lend his name to the cases filed in bankruptcy court in this district although Respondent actually performed the legal services and represented the clients.*

The Respondent does not specifically admit, deny, or respond to this statement.

He does state, as previously noted, that his suspension never materialized because the proposed settlement between him and the Board of Professional Responsibility was rejected by the Supreme Court of Tennessee. After the settlement was reached, but before Respondent received notice from the Supreme Court in May 2008 that it was rejecting the settlement, Respondent advised his clients that, absent their objection, Landstreet would assume their representation during his anticipated suspension period of December 15, 2007, through March 15, 2008 ("Anticipated Suspension").

The Show Cause Motion does not expressly set forth what legal services Respondent allegedly performed during the Anticipated Suspension, other than the fact that all seven bankruptcy cases at issue were filed during this time. One case was filed on March 5, 2008; the rest were filed on March 4, 2008. Neither the Show Cause Motion nor the Response specifically addresses who performed the legal services in connection with the filing of the seven bankruptcy cases in question. The petition in each case, as well as each of the schedules, statements, etc., list J. Collins Landstreet II with the firm of Cowan & Landstreet as the attorney for the debtor, and the cases were filed with Landstreet's login and password. Landstreet's actual handwritten signature is not on any of the documents. Rather, his signature is indicated by a "/s/" followed by Landstreet's typed name as permitted by the Section III. A. 1 of the Administrative Procedures for Electronic Case Filing of the Bankruptcy Court.

Notwithstanding Landstreet's name on the filings, debtors in four of the cases, Rebecca Bales, Debra Glines, Benjamin and Krisna Bishop, and Steven and Nina Rasnick, all testified that they never met Landstreet, that they only met with Re-

spondent. In two of the other three cases, debtor Norman Markland and debtors Billy Joe and Sandra Jane Shepherd were asked at their § 341 meetings of creditors if they dealt with Respondent or Landstreet, and they answered the Respondent. It does not appear that Chad and Tammany Markland were asked if they ever met with Landstreet, although they only discussed meeting with Respondent. From the testimonies given, the only contact that any debtor had with Landstreet was in the Shepherds and Glines cases. Both of these debtors testified that they received a letter from Landstreet dated March 6, 2008, with the Shepherds stating that the letter advised them that their bankruptcy case had been filed, informed them of their § 341 meeting date, and gave them information about credit counseling.

It is undisputed that after the Anticipated Suspension was over, Respondent appeared with the debtors at their § 341 meetings and at their Rule 2004 examinations. As to payment of fees, all but the Bishops appeared to have paid Respondent prior to the Anticipated Suspension. Benjamin Bishop testified that he and his wife completed paying Respondent the requested fee of $1,300 during the latter part of December 2007 or in the first couple of days of January 2008.

As previously stated, under the local rules of the district court, any violation of the rules of professional conduct by the Respondent must be established by "clear and convincing evidence." Utilizing this burden of proof and carefully considering the record in these cases, this officer does not find that Respondent, believing that he was under suspension and thereby prohibited from practicing law, procured another attorney to lend his name to the cases filed in bankruptcy court in this district, while Respondent actually performed the legal

services and represented the clients. There is no evidence that during the Anticipated Suspension the Respondent personally met with or communicated by letter or telephone with any of the debtors or anyone on their behalf. As to the fact that the Bishops made their last payment to Respondent during the Anticipated Suspension, I find no misconduct from Respondent's receipt of this money since he purportedly arranged for his partner to provide the agreed-upon services.

Admittedly, all of the debtors' cases were filed during the Anticipated Suspension. However, all list Landstreet as the attorney of record, and the cases were filed using his log-in name and password. Under the bankruptcy court's Administrative Procedures for Electronic Case Filing, entry of an attorney's login and password serves as the attorney's signature on all documents electronically filed with the court for purposes of Federal Rule of Bankruptcy Procedure 9011, the local rules of this court, and any other purpose for which a signature is required in connection with proceedings before the court. *See* Section III. A. 1. b. Although Landstreet rarely appears in bankruptcy court in this district,[1] he did undergo training for electronic filing conducted by the bankruptcy clerk and consequently received a log-in name and password on March 22, 2007, the same day as Respondent. Accordingly, this officer does not conclude that Landstreet's representation of the debtors was a fraudulent subterfuge instigated by the Respondent.

Nonetheless, Landstreet's failure to meet with the debtors prior to filing their bankruptcy cases is troubling, and considering the other problems in the debtors' cases as hereafter discussed, raises serious question as to whether Landstreet met the requisite professional standard of care ex-

---

1. Prior to the filing of the instant cases on March 4 and 5, 2008, Landstreet had entered an appearance in only four cases in bankruptcy court in this district since December 2000.

pected of attorneys representing debtors in bankruptcy court. In a bankruptcy court decision from the Eastern District of North Carolina, addressing the issue of a chapter 13 attorney who failed to meet with his clients to go over the petition, schedules, and statements prior to their filing, the court stated:

> There is a professional standard of care that must be met by the reasonably prudent attorney. That professional standard of care requires attorneys practicing in this court to meet with each debtor personally and review the petition with the debtor prior to filing to insure the correctness of the information contained therein and the client's comprehension of the seriousness and consequences of filing the petition. It is not sufficient for the debtor to meet only with the paralegal unless an exceptional or emergency situation exists. The attorney should provide a copy of any and all paperwork, including the petition, contemporaneously with the final review, signing and filing of the petition.

*In re Sledge*, 352 B.R. 742, 748 (Bankr. E.D.N.C.2006).

This officer does not necessarily agree with the *Sledge* court's conclusion that the filing attorney in every bankruptcy case must personally meet with the debtor while he or she reviews the bankruptcy papers prior to their filing. In this officer's view, this task may be ordinarily performed by an experienced and supervised staff person in the attorney's office, as long as the attorney previously met with the client, explained the process, supervised the preparation of the bankruptcy papers, and personally reviewed the papers prior to their filing. In the instant case, however, the record does not reflect that Landstreet or anyone on his behalf met with the debtors or made other arrangements to ensure the correctness of the information set forth in the bankruptcy papers prior to their filing. Because this

officer hereafter recommends that disciplinary proceedings be commenced against Landstreet for other deficiencies in these cases, any investigation should address Landstreet's actions in this regard.

**D.** *Respondent charged the clients more than the fee disclosed in the bankruptcy disclosure statements filed with the court.*

Under § 329 of the Bankruptcy Code:

(a) Any attorney representing a debtor in a case under this title ... shall file with the court a statement of the compensation paid or agreed to be paid ... for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

> (1) the estate ...; or
>
> (2) the entity that made such payment.

11 U.S.C. § 329.

As explained by the Sixth Circuit Court of Appeals, § 329 is implemented by Federal Rules of Bankruptcy Procedure 2016(b) and 2017. *In re Kisseberth*, 273 F.3d 714, 720 (6th Cir.2001). Rule 2016(b) provides in pertinent part: "Every attorney for a debtor ... shall file and transmit to the United States trustee ... the statement required by § 329 of the Code.... A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed." Under Rule 2017, the bankruptcy court may determine, after notice and a hearing, that any portion of an attorney's fee for work in a bankruptcy case is excessive. *In re Kisseberth*, 273 F.3d at 720.

"An attorney in a bankruptcy case has an affirmative duty to disclose fully and

completely all fee arrangements and payments." *Id.* "The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys." *Id.* at 721. "Accordingly, a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." *In re Downs,* 103 F.3d 472, 477 (6th Cir. 1996) (internal citation omitted). "Disgorgement may be proper even though the failure to disclose resulted ... from negligence or inadvertence." *In re Kisseberth,* 273 F.3d at 721 (citing *In re Park–Helena Corp.,* 63 F.3d 877, 882 (9th Cir.1995)).

In each of the seven cases at issue, Landstreet filed along with the petition a Disclosure of Compensation Statement setting forth that he had agreed to accept, and had received from the debtor(s), the sum of $750 for services rendered in connection with the bankruptcy case. The debtors in these cases, however, all testified that they paid Respondent more than what was disclosed. Specifically, each stated that they paid the following, which included the bankruptcy filing fee of $299:

| | |
|---|---|
| Rebecca L. Bales | $1,295 |
| Norman Dayton Markland | $1,300 |
| Billy Joe and Sandra Jane Shepherd | $1,300 |
| Chad and Tammany Celesta Markland | $1,009 |
| Debra Jeanette Glines | $1,299 |
| Benjamin Earl and Krisna Jean Bishop | $1,300 |
| Steven Lee and Nina Jo Rasnick | $1,300 |

Each of these amounts were confirmed by the copies of checks attached to the Amended Disclosure of Compensation Statements filed by Landstreet on August 4, 2008, which indicated that the paid fees, less the bankruptcy filing fees, had been refunded to the debtors.

In his Response, Respondent states the following regarding the fees paid him by the debtors:

Prior to adoption of ECF in bankruptcy, our office had established a base attorney's fee of $750.00, plus filing fee, for a Chapter 7 case; accordingly, the fee disclosure form in our software program had a default setting of $750.00 that automatically printed said figure until changed. After completing ECF training, the previous fee schedule was raised to $1,000.00, plus filing fee, for a Chapter 7 case; however, when these seven cases were programmed for electronic filing, the previous default setting printed $750.00 on each petition which error was not discovered until the Section 341 meeting.

This officer accepts at face value Respondent's explanation that he did not discover the error in the Disclosure of Compensation Statements until the § 341 meeting in each case. Respondent's explanation, however, fails to address why he did not amend the Statements to set forth the correct fee once he learned of the error and why Landstreet did not catch the mistake when he presumably reviewed the Disclosure of Compensation Statements prior to their filing. Although not expressly stated in his Response, it is evident that Respondent resumed the representation of the debtors after his Anticipated Suspension was over since he appeared with the debtors at their § 341 meetings and Rule 2004 examinations held on April 2, 2008, and April 22, 2008, respectively. The United States Trustee filed the motions to disgorge, premised in part on the incorrect statements, on June 6, 2008. Yet, no amended fee disclosure statements were filed in these cases until August 4, 2008, and apparently only then to disclose the fact that the fees had been refunded to the debtors.

As previously quoted, under Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, a debtor's attorney must file and transmit to the United States Trustee

a supplemental disclosure statement within 15 days after any payment or agreement not previously disclosed. As attorney for the debtors, Respondent had a duty to promptly amend the fee disclosure statements upon learning that they failed to disclose the proper amounts paid to him for services in the debtors' cases. *See, e.g., In re Patti,* 293 B.R. 297, 298 (Bankr. D.R.I.2003) (attorney for debtor has a continuing duty to update the Rule 2016(b) statement). The fact that the correct amounts were revealed at the § 341 meetings does not excuse Respondent's failure to file amended or supplemental disclosure statements as required by Rule 2016(b). *See In re Smitty's Truck Stop, Inc.,* 210 B.R. 844, 849 (B.A.P. 10th Cir.1997) (failure of attorney to file supplemental disclosure statement setting forth retainer paid to him, which retainer had inadvertently been omitted from initial statement, was not excused by disclosure of retainer in debtor's statement of financial affairs); *In re TJN, Inc.,* 194 B.R. 400, 403 (Bankr. D.S.C.1996) (attorney's disclosure of payment from principal in his fee application was not adequate substitute for filing of supplemental statement of compensation paid). "The United States Trustee, other parties in interest and the Court should not be required to ferret out facts which the Rules require that the Law Firm plainly, openly and timely disclose." *In re TJN, Inc.,* 194 B.R. at 403. Respondent's unexplained failure to amend was a violation of Federal Rule of Bankruptcy Procedure 2016(b) and, therefore, sanctionable behavior.

E. *Respondent erroneously advised the clients they would have 15 days after the bankruptcy filing to obtain credit counseling rather than the required pre-bankruptcy counseling.*

Subject to certain exceptions that are inapplicable here, no individual may be a debtor in a bankruptcy case unless within the 180 days preceding the bankruptcy filing, the individual "received from an approved nonprofit budget and credit counseling agency ... an individual or group briefing ... that outlined the opportunities for available credit counseling...." 11 U.S.C. § 109(h). It is undisputed that none of the debtors in the seven subject cases received the required credit counseling briefing prior to their bankruptcy filing and that, therefore, each was ineligible for bankruptcy relief at the time that their cases were filed.

In his Response to the Show Cause Order, Respondent expressly denies that he "ever advised any client that the 'Pre-bankruptcy' counseling course could be taken within 15 days after filing of the bankruptcy." Respondent states that "each client was informed during the initial office consultation that the 'Pre–Bankruptcy' counseling was to be taken before filing," and observes that each client was also advised of the requirement in his December 20, 2007 letter.

None of the debtors testified that they had been personally advised by Respondent that they had 15 days after their bankruptcy case was filed to take the required pre-filing course. The testimony of each debtor as to what he or she was told about a credit counseling course was as follows:

*Rebecca L. Bales.* Bales testified that she first met with Respondent in June or July 2007, and that she was told in one of her initial meetings about the requirement to take a credit counseling course before her bankruptcy. Bales stated that she was told in these consultations that she would get a letter about the counseling, but that she received no such letter. Bales raised the possibility that the failure was due to the fact that she moved in February 2008 and had not provided her new address to Re-

spondent's office. Bale testified that she had a friend who was having a bankruptcy case filed by Respondent's office, and that upon learning that the friend's case had been filed, she called the Respondent's office and was told by the office manager that her case had been filed and that she needed to take the credit counseling course.

*Norman Dayton Markland.* The testimony of Markland, who is unable to read or write, was unclear on the subject of what he was told regarding credit counseling. Markland stated that he did not receive a letter regarding credit counseling, but that he took the course on March 14, 2008, after his bankruptcy filing on March 5, 2008.

*Billy Joe and Sandra Jane Shepherd.* The Shepherds testified that they received Respondent's December 20, 2007 letter in January and that at some point they received a letter from Landstreet dated March 6, 2008, but postmarked March 11, 2008, which informed them that their bankruptcy case had been filed, advised them of their scheduled meeting of creditors, and gave them information about the credit counseling course.

*Chad and Tammany Celesta Markland.* Tammany Markland testified that they received the December 20, 2007 letter from Respondent, and that they took the class after their bankruptcy case was filed. She was not specifically asked what she had been told about credit counseling.

*Debra Jeanette Glines.* Glines testified that Respondent informed her about the credit counseling requirement during their initial discussions and that she received a letter about a month before her April 2, 2008 meeting of creditors listing a website for the credit counseling. It was not clear from her testimony whether this letter was the March 6, 2008 letter from Landstreet although Glines also referenced such a letter at a different point in her testimony.

*Benjamin Earl and Krisna Jean Bishop.* Benjamin Bishop testified that he and his wife received Respondent's December 20, 2007 letter the first of January and that about a week before they took the course on March 11, 2008, they received a telephone call from Respondent's office telling them that they had to take the credit counseling course.

*Steven Lee and Nina Jo Rasnick.* The Rasnicks testified that they received Respondent's December 20, 2007 letter and that they understood that they had to take the credit counseling course before their bankruptcy case was filed, but testified that they did not know when the case would be filed and that if they had known, they would have taken the course before the bankruptcy filing.

After carefully considering the record, this officer concludes that Respondent did not wrongly advise the debtors they would have 15 days after the bankruptcy filing to obtain credit counseling. Although difficult to generalize, it appears that Respondent correctly informed most of the debtors in their initial meeting that they would need to take a credit counseling course before their bankruptcy case was filed and that Respondent confirmed this advice in his December 20, 2007 letter to the debtors.[2] Notwithstanding this correct advice,

---

2. This letter was less than clear as to what the debtors would need to do regarding the credit counseling course. While the letter referred to an attached list of providers for the "Pre–Bankruptcy" course, the letter also referred to the course as the "Personal Financial Man-

agement Instructional Course," which is the course that debtors must take *after* their bankruptcy case is filed in order to receive a discharge. *See* 11 U.S.C. § 727(a)(11) ("The court shall grant the debtor a discharge, unless ... after filing the petition, the debtor

someone in Respondent's office later told Bales and the Bishops, apparently after their cases had already been filed, that they needed to take the credit counseling course. Because Respondent had already turned the cases over to Landstreet at that point, and based on the assumption that Respondent's office staff is also the staff of Landstreet, the faulty information given to the debtors will not be attributed to Respondent.

On the other hand, because Landstreet was representing the debtors at the time, any misinformation given by his law office was his responsibility. Moreover, at least two of the debtors, the Shepherds and Glines, referenced a letter dated March 6, 2008 letter from Landstreet, which the Shepherds testified advised them that their bankruptcy case had been filed and gave them the website for credit counseling. Although this letter is not in the record, this testimony suggests that at least the Shepherds were erroneously advised by Landstreet that they could wait until after the bankruptcy filing to receive the credit counseling briefing.

As the attorney initiating the bankruptcy cases, it was the responsibility of Landstreet to conduct a reasonable inquiry to ensure that the debtors were eligible for bankruptcy relief prior to filing their petitions.[3] Under Rule 9011(b) of the Federal Rules of Bankruptcy Procedure, by filing a petition with the court, an attorney:

> is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> ...
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support[.]

Absent some nonfrivolous argument that the debtor is not required to receive pre-bankruptcy credit counseling, a petition filed by a debtor who has not received a

---

failed to complete an instructional course concerning personal financial management[.]"); Fed. R. Bankr.P. 1007(b)(7) ("An individual debtor in a chapter 7 or chapter 13 case shall file a statement of completion of a course concerning personal financial management[.]"); Fed. R. Bankr.P. 1007(c) ("In a chapter 7 case, the debtor shall file the statement required by subdivision (b)(7) within 45 days after the first date set for the meeting of creditors under § 341 of the Code[.]").

Because the pre-bankruptcy credit counseling course and the post-bankruptcy financial management course are often offered by the same providers, there is a risk that if a debtor tells a provider nothing other than the fact that he or she needs to take a course by the name given in Respondent's letter, the provider will administer the wrong course. This is exactly what happened in Bales' case: the initial course taken by her was the post-bankruptcy Personal Financial Management Course, rather than the pre-bankruptcy credit counseling briefing. Moreover, other than the reference to a "Pre–Bankruptcy course," and its attached list of providers, the Respondent's December 20, 2007 letter did not specifically state that the debtors would have to take the course before their case was filed. Finally, and most importantly, as the testimony of the Rasnicks indicated, because the letter did not specify when their debtors' bankruptcy cases would be filed, the debtors apparently did not know of the deadline by which they had to take the pre-bankruptcy credit counseling.

3. Although not specifically raised in the Show Cause Order, this officer notes that in each of the subject cases Landstreet filed Exhibit D to the petition that contained the express misrepresentation that the debtor had received a briefing from a credit counseling agency within the 180 days before the filing of the bankruptcy case.

credit counseling briefing is lacking the necessary evidentiary support. *See In re Pettey,* 288 B.R. 14, 23 (Bankr.D.Mass. 2003) (Rule 9011 sanctions imposed on chapter 13 debtor's attorney for filing petition on behalf of debtor whose unsecured debt clearly rendered him ineligible for chapter 13 relief, where attorney failed to present any nonfrivolous argument in support of debtor's eligibility for such relief); *In re Merriam,* 250 B.R. 724, 733 (Bankr. D.Colo.2000) (the bankruptcy petition initiates a bankruptcy case and contains legal allegations that a debtor is eligible for bankruptcy relief).

While Landstreet is not the subject of the present disciplinary proceedings, it must be noted that there is no indication in the record that Landstreet personally, or anyone on his behalf, contacted the debtors before filing their bankruptcy petitions in order to ensure that they had received the necessary briefing. Accordingly, this officer recommends that disciplinary proceedings be initiated to determine whether Landstreet violated Rule 9011(b)(2) or (3) of the Federal Rules of Bankruptcy Procedure in filing the subject debtors' petitions. Any inquiry should also seek to determine whether Landstreet gave the debtors erroneous legal advice regarding the credit counseling requirement, thereby violating Rule 1.1 of the Tennessee Rules of Professional Conduct, which states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

### F. *Respondent failed to file the clients' cases in a timely manner.*

As previously noted, the subject bankruptcy cases were commenced on March 4 and 5, 2008. The debtors' testimonies indicate the following as to when they first met with Respondent and when they paid him to file their bankruptcy cases.

*Rebecca L. Bales.* Bales first consulted the Respondent in June or July 2007 and began to make payments shortly thereafter, with the last payment made "right before Thanksgiving."

*Norman Dayton Markland.* Markland paid Respondent in full in August or September 2007, and testified that he thought his case was filed in September or October 2007 because that is when he signed some papers.

*Billy Joe and Sandra Jane Shepherd.* It is unclear when the Shepherds paid the Respondent. They testified that they first met with him on May 1, 2007, and that thereafter they sold their car and used the sale proceeds to pay his fees. The Shepherds testified that they did without a car until it got too cold to walk everywhere, when they purchased a car on January 1, 2008.

*Chad and Tammany Celesta Markland.* Tammany Markland testified that she paid Respondent in March 2007 from monies received from her income tax refund. She stated that she was told that it would take three to four weeks for their case to be filed and was "a little surprised" that it had taken so long for their case to be filed.

*Debra Jeanette Glines.* The receipt given to Glines by Respondent's office indicates that she paid him on March 28, 2007. She testified that on that date she brought him the paperwork to file her case and thought that it would be filed in six to eight weeks. Glines testified that she called his office a few times and asked why it was taking so long and was told that it was taking some time because they were changing over to electronic filing.

*Benjamin Earl and Krisna Jean Bishop.* Benjamin Bishop testified that he finished paying Respondent the request-

ed fee at the end of December 2007 or the first couple days in January 2008. *Steven Lee and Nina Jo Rasnick.* Nina Rasnick testified that she and her husband first met with Respondent in October 2007, when they paid him in full for filing their bankruptcy case. Her receipt indicated a payment date of October 30, 2007. She testified that on that date they provided Respondent a list of their creditors and they thought that their case would be filed sooner than it was. She testified that when she would call Respondent's office and ask about the status of her case she was told that they were working on it.

Notwithstanding the foregoing testimonies, Respondent expressly denies in his Response that he failed to file the clients' cases in a timely manner. According to the Respondent:

> [T]he Rule 2016(b) fee disclosure seeks disclosure of fees paid by debtor "within one year of filing," clearly indicating that the services provided before filing a case continue over a one year period. Moreover, in this particular series of cases, our office was transitioning to electronic filing requiring course instruction, new software, and a period of familiarization with the new program, all of which was accomplished within the period contemplated. In addition, it is our office practice to confirm to creditors that a debtor is in the process of filing bankruptcy, which was done in these cases so that no client had any adverse financial consequences during the period prior to the filing.

This officer rejects the suggestion by Respondent that because he is required by Rule 2016(b) to disclose fees paid to him within the year preceding the date the bankruptcy case was filed, it was appropriate for him to take an entire year to process and file a bankruptcy case. The one-year disclosure requirement of Rule 2016(b) is premised on the assumption that any compensation paid before the year prepetition was not for services rendered in contemplation of bankruptcy. *In re Prudhomme,* 43 F.3d 1000, 1003 (5th Cir. 1995). The rule is not a license for an attorney to delay up to one year to file a bankruptcy case for a debtor that has otherwise contracted and paid for the attorney's services with the expectation the case would be diligently filed. From all indications, the seven bankruptcy cases at issue are run-of-the mill, routine consumer chapter 7 cases that could have been ready for filing in a few weeks. With the exception of the Bishops who did not finish paying Respondent until the end of December, this officer sees no reason why the Respondent could not have filed each of these cases before December 16, 2007, the beginning of his Anticipated Suspension.

Moreover, there is no indication that the Respondent advised each of these debtors that it would be months after they paid him before their cases were filed. To the contrary, Tammany Markland testified that she was told in March 2007 that her case would be filed in three to four weeks. Glines, who paid the Respondent on March 28, 2007, testified that she thought her case would be filed in six to eight weeks. Nina Rasnick testified that she thought that her case would be filed sooner than it was and called at least once to check on the delay. While these debtors were not asked specifically if they were told when their cases would be filed, it is doubtful that they would have expected their case to have been filed within the stated times if Respondent had told them otherwise.

This officer does not find that the delay was justified by the transition to electronic filing. By general order entered September 27, 2005, all attorneys practicing in the United States Bankruptcy Court for the Eastern District of Tennessee were required to file their papers electronically

through the Electronic Case Filing system beginning January 2, 2006. The earliest that a debtor in one of the instant cases consulted Respondent was March 2007, more than a year after mandatory electronic filing went into effect. While it is true that special software is needed and that an attorney and his staff must familiarize themselves with the process, the records of the clerk of the bankruptcy court indicate that Respondent and his staff received electronic filing training from the clerk on March 22, 2007, and on that date Respondent was given his password to electronically file cases with the bankruptcy court. Thus, the changeover to electronic filing provides no justification for the fact that the debtors' cases were not filed until March 2008. As to Respondent's explanation that the delay was caused in part by the fact that his office notifies creditors of an individual's filing of bankruptcy, this officer sees no reason why such notice should have resulted in more than a few days of additional delay.

Based on the foregoing, I conclude that Respondent violated Rule 1.3 of the Tennessee Rules of Professional Conduct, which states that: "A lawyer shall act with reasonable diligence and promptness in representing a client."

G. *Respondent caused to be placed on petitions, schedules, and the like, electronic signatures of the clients even though the clients had never signed the documents purportedly bearing their signatures.*

In his Response, Respondent expressly denies that he "caused electronic signatures to be placed on petitions, schedules, and the like, of clients who had not signed the documents." As evidence of this denial, Respondent simply refers to Exhibit

1(A)-(G), attached to his Response. This collective exhibit contains the signature pages in each of the instant cases, consisting of the signature pages for the petitions; Exhibit D to each petition, which must be separately signed by a debtor; the signature page of the Statement of Financial Affairs; the signature page for the Schedules; the signature page of Form 22A, the Chapter 7 Statement of Current Monthly Income and Means–Test Calculation; the Statement of Intention; and the Creditor Matrix Verification.

A review of these documents reveals that each bears a typed date, the "/s/" followed by the typed name of the debtor, and then the debtor's handwritten signature. There is no separate handwritten date to indicate when the actual signature was added to the document, only the typed date. Assuming that the typed date indicates the date the debtor actually signed the documents (Respondent does not expressly state this in his Response, but this officer assumes that is what the Respondent is indicating by attaching the exhibits to the Response in support of his denial), the dates the debtors signed the documents in their cases and the dates the cases were filed are as follows:

| Debtor | Signature Date | Date Case Filed |
|---|---|---|
| Rebecca L. Bales | February 28, 2008 | March 4, 2008 |
| Norman Dayton Markland | March 5, 2008 | March 5, 2008 |
| Billy Joe and Sandra Jane Shepherd | February 13, 2008 | March 4, 2008 |
| Chad and Tammany Celesta Markland | March 10, 2008 [4] | March 4, 2008 |
| Debra Jeanette Glines | February 11, 2008 | March 4, 2008 |
| Benjamin Earl and Krisna Jean Bishop | February 22, 2008 | March 4, 2008 |
| Steven Lee and Nina Jo Rasnick | February 26, 2008 | March 4, 2008 |

---

4. The Marklands' Statement of Financial Affairs and Form 22A bear a March 18, 2008 signature date. All other documents in the Marklands' case attached to the Response, including the petition, show a March 10, 2008 signature date.

As is readily apparent from the above list, the Marklands' bankruptcy case was filed before they signed any of the documents in their case, even though the documents filed with the court, including the voluntary petition, indicate by the "/s/" form of signature that the documents had been signed previously by the Marklands. Under the Administrative Procedures For Electronic Case Filing:

> [A]ny petition, list, schedule, statement, and amendment thereto that requires the debtor's signature may be filed electronically by a Registered User with the debtor's signature indicated as "/s/" followed by the typed name of the debtor, provided the debtor has actually signed a copy of the document and the filing attorney retains the signed document.... Electronic filing of a verified document by an attorney is a representation for the purposes of Fed. R. Bankr.P. 9011 that the person or persons required to sign and verify the document did in fact sign and verify it before it was filed.

Admin Proc. Section III. A. 3–4.

One court facing a similar situation has observed:

> In filing a petition electronically, the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor *prior* to electronically filing the case.
>
> . . . .
>
> When the petition was received, the court was presented with a document which stated on its face that debtor had signed it, under penalty of perjury, when it was not true. This amounts to fraud. The court must consider that [attorney's] action of filing a petition electronically purporting to have debtor's signature is no different than [the attorney] physically forging debtor's sig-

nature and handing the petition over the counter to the clerk.

*In re Wenk,* 296 B.R. 719, 725 (Bankr. E.D.Va.2002) (emphasis in original).

The court in *Wenk* noted that Federal Rule of Bankruptcy Procedure 9011 provides that an attorney filing a petition or other paper with the court is certifying certain representations, including that the filing was not presented for an improper purpose and that the claims presented therein were warranted by existing law. *Id.* Noting that Rule 9011 expressly prohibits attorneys from signing a debtor's name to the lists, schedules and statement of financial affairs, and that Rule 1008 requires that these documents be verified by the debtor, the court found that the filing attorney violated Rule 9011, subject to sanctions, "because there could not have been a belief that the filing of a petition with what amounts to a forged debtor's signature was proper or warranted under existing law...." *Id.* at 728. *See also In re Alvarado,* 363 B.R. 484, 492 (Bankr. E.D.Va.2007) (attorney found to be in contempt for electronically filing a petition that stated on its face that it had been signed by the debtor when it had not); *In re Phillips,* 317 B.R. 518, 524 (B.A.P. 8th Cir.2004) (attorney violated Rule 9011 and court's CM/ECF administrative procedures by electronically filing a case on behalf of an individual who had not signed a petition).

As previously stated, the filing attorney in the Marklands' bankruptcy case was Landstreet. Because of the apparent misrepresentation by Landstreet in the Marklands' case, it is recommended that disciplinary proceedings be commenced against Landstreet to determine whether his filing of the case was a violation of Rule 9011 and a fraud on the bankruptcy court.

As to any liability of Respondent in this regard, under Rule 5.1(c) of the Tennessee Rules of Professional Conduct:

A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer:

(i) is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, has direct supervisory authority over the other lawyer, is serving as co-counsel with the other lawyer in the matter, or is sharing fees from the matter with the other lawyer; and

(ii) knows of the conduct at a time when its consequences can be avoided or mitigated, but fails to take reasonable remedial action.

Applying this rule to the present matter, there is nothing in the record that indicates that Respondent ordered the Marklands' bankruptcy case to be filed before they had signed the petition; or that Respondent, with knowledge of this conduct, ratified it; or that as a partner of Landstreet, Respondent knew of the conduct at a time when its consequences could have been avoided or mitigated. Accordingly, this officer does not find based on the record that Respondent is responsible for any misconduct by Landstreet in the filing of the Marklands' bankruptcy petition and in the misrepresentation of their signatures.[5]

---

5. The summaries of the debtors' testimonies set forth in the Show Cause Motion raise doubts as to whether debtors other than the Marklands did in fact sign their bankruptcy papers on the dates typed beside their handwritten signatures. These summaries set forth statements by several of the debtors that they did not review and sign their petitions, etc., before their cases were filed. However, a review of the recordings of the § 341 meetings and the Rule 2004 examinations indicate that the testimonies of some of the debtors were unclear and often contradictory on this point. For example, at her § 341 meeting of creditors when asked when she signed her schedules and petition, Bales responded that they had been faxed to her and that she then signed and faxed them back, probably in February or the first of March 2008. However, at her Rule 2004 examination, Bales testified that she had no opportunity to review everything before her case was filed, that she did not recall signing a document that looked like a petition, and that the only document she remembers signing was a document about her pay stubs, which was presumably her payment advice statement required by E.D. Tenn. LBR 1007–1.

Similarly, Glines testified at her Rule 2004 examination that she never signed or received a copy of her petition and that she only signed one document—after her case was filed. However, at her § 341 meeting held on April 2, 2008, Glines was asked if she had reviewed her petition and schedules, and she responded, "I believe that I did," and when asked when, replied, "probably the same week that I received them, which was probably a month or so ago."

In the Bishop case, the summary of the debtors' Rule 2004 testimony set forth in the Show Cause Motion indicates the Bishops testified that they never went to Respondent's office to sign the bankruptcy petition and schedules after they were completed. However, the recording of this examination reveals that when asked at another point in their questioning if they had signed documents other than their payment advices statement, they responded that they were sure that they did. At their § 341 meeting when asked if they had reviewed their petitions and schedules, Benjamin Bishop replied, "Sure," and when asked when they had been signed, answered, "maybe in February or January, we're really not sure."

The Rasnicks were asked at their § 341 meeting on April 2, 2008, when they had reviewed and signed their schedules and Nina Rasnick replied that they went and signed a couple of papers maybe a month ago. At their Rule 2004 examination, Nina Rasnick testified that she did not remember signing all of her documents, that she only remembered signing the payment advices statement on the day before their meeting of creditors.

H. *Respondent acted in an unprofessional and unethical manner and/or violated the Rules of Professional Conduct.*

Other than the matters previously addressed, the record does not set forth clear and convincing evidence of other violations by the Respondent.[6]

## V. *Conclusion*

This officer recommends that Respondent's motion to dismiss the Show Cause Order be denied. As to the specific allegations of misconduct set forth in the Show Cause Order, this officer concludes that Respondent violated Federal Rule of Bankruptcy Procedure 2106(b) by failing to amend the Disclosure of Compensation Statements upon learning at the § 341 meeting of creditors that the filed statements incorrectly set forth the fees paid him by the debtors. Respondent also violated Rule 1.3 of the Tennessee Rules of Professional Conduct by failing to file his clients' bankruptcy cases in a timely manner.

Respondent has previously remitted all fees paid to him by the debtors and there is no evidence in the record that the debtors were prejudiced by Respondent's failure to file their cases more promptly, although this issue was not a subject of inquiry at either the § 341 meetings or the debtors' Rule 2004 examinations. Nonetheless, this officer is disturbed by the Respondent's lack of admission that he did anything wrong in his delay in filing the bankruptcy cases. Debtors Chad and Tammany Markland and Debra Glines had to wait a year after they paid Respondent in March 2007 before their cases were filed in March 2008, while other debtors had to wait several months. Moreover, this officer can not help but note that although Respondent is not legally responsible for any errors or misconduct by Landstreet,

---

The Shepherds testified that they signed their bankruptcy papers in May 2007, while Norman Markland testified that he signed his bankruptcy papers in August or September 2007. Presumably because the United States Trustee had not been provided with copies of the debtors' signed petitions prior to the Rule 2004 examinations, no testimony was elicited as to whether the Shepherds and Norman Markland re-signed new documents on the typed dates indicated. Unfortunately, the discrepancies between the debtors' testimonies and their signed petitions can not be resolved from the record.

**6.** In addition to the misstated fee amount set forth in the Disclosure of Compensation Statement, which mistake was repeated in each debtor's statement of financial affairs, testimony of three of the debtors revealed errors in their schedules and statements, although this was not the focus of the examinations. For instance, Bales' schedules indicated that she had no bank accounts and that no items had been repossessed or returned within the one year preceding her bankruptcy filing. However, she testified at the § 341 meeting of creditors that she had maintained a savings account with $500 in it for the last five years and that six months previously a Honda CRV automobile had been repossessed. Norman Markland testified at his § 341 meeting that he owned a Ford Thunderbird automobile that had not been listed in his case. Glines testified that she received a lump sum Social Security check in the amount of $6,615 in September 2007, which was not disclosed in her statement of financial affairs. Although she paid this money to relatives who had previously loaned her money, none of the payments to the relatives were disclosed.

While Respondent is not liable for the errors since he did not file the schedules and statements, he took no action in any of the cases to correct the errors after he resumed their representation and after the errors came to light at the debtors' § 341 meetings and the Rule 2004 examinations. Nonetheless, the failure to amend these errors is not a basis for the recommended disciplinary action against the Respondent because no factual allegations in this regard were set forth in the Show Cause Order.

presumably none of these errors would have taken place if Respondent had diligently filed the bankruptcy cases before his Anticipated Suspension arose. Based on the foregoing, this officer recommends that Respondent be suspended from practice before the United States District Court for the Eastern District of Tennessee for a period of six months.

This officer also recommends that disciplinary proceedings be initiated against attorney J. Collins Landstreet II. These proceedings should address Landstreet's failure to discover the fee error in the Disclosure of Compensation Statements; whether he erroneously advised the clients they would have 15 days after the bankruptcy filing to obtain credit counseling, thereby violating Tennessee Rule of Professional Conduct 1.1; whether he violated Federal Rule of Bankruptcy Procedure 9011 by failing to conduct a reasonable inquiry to determine the debtors' eligibility for bankruptcy relief and the correctness of the information set forth in the debtors' bankruptcy papers; and whether he violated Rule 9011 and is guilty of a fraud on the court by filing the bankruptcy case of Chad and Tammany Markland prior to their having signed the documents, yet representing to the court that they had in fact been signed.